**Udall | Shumway**
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Kimberly R. Davis - # 030210
krd@udallshumway.com
Attorney for Defendants Maricopa County Community College District, Maricopa Skill Center and Lisa Hemming

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Schaun Owens, | NO. CV-15-01769-PHX-SPL |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Maricopa County Community College District, Maricopa Skill Center, and Lisa Hemming, | |
| Defendants. | |

Defendants Maricopa County Community College District ("District") and Lisa Hemming ("Hemming") hereby move for summary judgment on all claims. This motion is supported by the Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment ("DSOF") filed contemporaneously. Plaintiff alleges racial discrimination and First Amendment retaliation only in the 2013-14 school year leading up to Plaintiff's February 12, 2014 termination as a Cosmetology Associate Instructor at the District's Maricopa Skill Center's Northwest Campus. (DSOF ¶ 32-34) Defendant

Hemming was Plaintiff's supervisor during this time. (DSOF ¶ 36) The evidence does not support any of the claims asserted, so summary judgment should be granted on each claim.

## I. THERE IS NO VALID CLAIM OF RACIAL DISCRIMINATION

Plaintiff asserts racial discrimination claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 (through a claim of equal protection violation). To prevail on a claim of racial discrimination under § 1981 and § 1983, a plaintiff must prove intentional discrimination. *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1144 (N.D. Cal. 2014). Plaintiff cannot prove such a claim against the District and/or Hemming.

### A. The District Is Not Liable For Alleged Racial Discrimination

Under § 1981 and § 1983, there is no respondeat superior automatic liability of a government employer for an employee's racial discrimination. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) (§ 1983 case); *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996) (§ 1981 case); *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1148 (N.D. Cal. 2014). The *Monell* liability of a governmental entity can be shown by: (1) a policy or custom of the entity which includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law; (2) the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official governmental policy; or (3) an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

2

### *1. There Is No Policy Or Practice Of Racial Discrimination*

Identifying a policy matters, because doing so "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Commis of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997). Plaintiff certainly has not identified any District policy in favor of racial discrimination. The District has an anti-discrimination policy plus internal procedures to investigate and deal with alleged discrimination based upon specified protected criteria including race.[1] (DSOF ¶ 19-24) The policy and the procedures applicable to employees such as Plaintiff were available on-line to all employees. (DSOF ¶ 22) Although aware of the policy and procedures, Plaintiff never utilized such procedures, and she never told anyone at the District that she claimed she was discriminated against due to her race. (DSOF ¶ 23, 142-143) Plaintiff also testified in this lawsuit that she did not believe she was discriminated against or terminated because of her race. (DSOF ¶ 144)

Even where there is no formal policy, "persistent and widespread discriminatory practices of state officials ... could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978) (citation omitted). Plaintiff here has failed to show a widespread pattern of repeated racial discrimination. *See Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992); *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1149-50 (N.D. Cal. 2014) (no

---

[1] A probationary employee such as Plaintiff can file a discrimination complaint with the District. (DSOF ¶ 25)

pattern of repeated discrimination as to others).  The other African-American Cosmetology Associate Instructor (Toni Trott) at the Northwest Campus did not feel discriminated against in any way due to her race.  (DSOF ¶ 139-141)   Plaintiff only points to herself as allegedly discriminated against due to her race, which is insufficient.  *Cloes v. City of Mesquite*, 582 Fed. Appx. 721, 724 (9th Cir. 2014).

The requirement to show a policy or practice is established only with "significant evidence" to show that a policy existed specifically authorizing or condoning the alleged practice. *Hazan v. Las Vegas Metropolitan Police Department*, 2014 WL 4635588, * 4 (D. Nev. 2014), *citing*, *Davis v. City of Ellensburg*, 869 F.2d 1230, 1234 (9th Cir.1989).  The key focus is on a policy or custom established by the final policymaker for the governmental entity.  *Erdman v. Cochise Cnty.*, 926 F.2d 877, 882 (9th Cir. 1991); *see also Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010).  The final policymaker here would be the Governing Board or the Chancellor of the District, who promulgates Administrative Regulations implementing anti-discrimination policies.  (DSOF ¶ 6-7, 19-24)  At worst, it is the Vice Chancellor who made the ultimate decision to terminate Plaintiff.  (DSOF ¶ 188)  There is no evidence here that any of them were aware of or established any policy or custom for allowing racial discrimination.

### 2. No Final Policymaker Committed Discrimination

Under the second possible basis for municipal liability, a single act or decision by a final policymaker can lead to *Monell* liability, because "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."  *Pembaur v. City of Cincinnati*,

4

475 U.S. 469, 481 (1986).  Liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered.  *Id*.; *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133,  1151 (N.D. Cal. 2014).  Determining who has authority to make final policy is a legal question governed by state law.  *Id*.  *Monell* liability is precluded "when an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  The "fact that a particular official - even a policymaking official - has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482 (1986).

Here Defendant Hemming recommended Plaintiff's termination for a variety of performance related deficiencies.  (DSOF ¶ 178-181)  The ultimate decision for termination was made by Vice Chancellor Bowers after the approval of a number of administrative officials and the human resources department.  (DSOF ¶ 179, 182-184, 187-189)  Merely going along with a subordinate's recommendation is not a delegation of authority to make the final determination.  Plaintiff would have to show that Vice Chancellor Bowers committed intentional discrimination.  *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010) (noting that " '[t]o hold cities liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle respondeat superior liability into section 1983 law'" (*quoting Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (per curiam)).

5

There is no evidence that Vice Chancellor Bowers terminated Plaintiff due to her race or knew that any subordinate acted out of racial bias. (DSOF ¶ 187-189) Plaintiff herself never alleged she was being discriminated against due to her race. (DSOF ¶ 142-143) Defendant Hemming never made any statements reflecting racial animus or bias. (DSOF ¶ 138) In the absence of knowledge that a subordinate was motivated by unlawful discriminatory animus, no *Monell* liability exists for the action of a final policymaker. *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1151-52 (N.D. Cal. 2014).

### 3. There Is No Evidence Of Ratification

The record here does not reflect ratification. "*Praprotnik* requires that a policymaker approve a subordinate's decision and *the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette v. Delmore*, 979 F.2d 1342, 1347–48 (9th Cir. 1992) (emphasis in original). There is no evidence to support that the Governing Board, the Chancellor, or even the Vice Chancellor knowingly ratified discrimination by any subordinate here (DSOF ¶ 187-189). *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 414 (1997) (because while inadequate scrutiny may raise the likelihood of a violation of rights, it does not compel the inference that failure to scrutinize produced a specific constitutional violation).

Ratification will not be found merely because a plaintiff complains to superiors about the alleged discriminatory conduct of an employee, otherwise this would allow for an end run to permit respondeat superior liability. *Jefferson v. City of Fremont*, 73 F. Supp. 3d 1133, 1153 (N.D. Cal. 2014), *quoting, Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 781–82 (9th Cir. 1997). Rather a plaintiff must prove that the final policymaking superior

6

had knowledge that racial animus motivated the decision and actions being challenged. *Id*. Here, in any event, Plaintiff never even complained of alleged racial discrimination making ratification almost impossible. (DSOF ¶ 142-143)

The racial discrimination claims against the District should be dismissed.

**B. Defendant Hemming Did Not Engage In Racial Discrimination**

Racial discrimination under § 1981 and § 1983 can generally be proven through either direct evidence of racial bias[2] or through the burden shifting framework set forth in *McDonnell Douglas*. *Manatt v. Bank of America NA*, 339 F.3d 792, 799 (9th Cir. 2003). Here there is no direct evidence of any racial bias, as Defendant Hemming never said anything reflecting racial bias. (DSOF ¶ 139) Under the *McDonnell Douglas* framework, plaintiff must demonstrate by evidence that: (1) that the plaintiff belongs to a protected class; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff. *Cornwell v. Electra Cent. Credit Union,* 439 F.3d 1018, 1028 (9th Cir. 2006). Even assuming a plaintiff makes a prima facie case of discrimination, the burden shifts to a defendant to show a legitimate reason for its actions. *Id*. A legitimate non-discriminatory reason offered by a defendant shifts the burden back to plaintiff to show pretext. *Schechner v. KPIXTV*, 686 F.3d 1018, 1025 (9th Cir. 2012).

---

[2] Direct evidence includes "clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Coghlan v. Am. Seafoods Co*., 413 F.3d 1090, 1095 (9th Cir. 2005).

"A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028, n. 6 (9th Cir. 2006). When the evidence on which a plaintiff relies is circumstantial, that evidence must be "specific and substantial to defeat the employer's motion for summary judgment." *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 753 (9th Cir. 2010). To avoid summary judgment, a plaintiff must adduce admissible evidence that either a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence. *Brown v. City of Tucson*, 336 F.3d 1181, 1188 (9th Cir. 2003).

At the Northwest Campus, unlike other instructors, Plaintiff committed and/or was reported to have committed the following policy violations:

- Failed to follow the curriculum in violation of expectations (DSOF ¶ 58-63)
- Was late to work multiple times in a short period of time in violation of expectations (DSOF ¶ 64-71)
- Allowed high school students to leave the closed campus in violation of a safety policy (DSOF ¶ 72-78)
- Allowed students in the instructor's office in violation of policy (DSOF ¶ 79-86)
- Signed off on attendance and assignment sheets after the day concluded in violation of policy (DSOF ¶ 87-88)
- Showed a non-cosmetology related movie during instructional time and committed fraud by crediting students with hours of instruction (DSOF ¶ 89-97)

- Allowed food and drink in a classroom in violation of policy and State Cosmetology Board Regulations (DSOF ¶ 98-107)
- Sleeping on the job as reported by three other instructors (DSOF ¶ 108-114)
- Failed to follow State regulations and policy regarding monitoring sanitation of clinic floor area and student lockers (DSOF ¶ 115-117)
- Improperly allowed students to perform services in violation of policy (DSOF ¶ 118-127)

These demonstrate that Plaintiff cannot even prove a prima facie case (see factors two and four), but would also constitute the non-discriminatory reasons for Plaintiff's treatment (Plaintiff received four Incident Reports[3], one of which was replaced with a verbal warning) during her employment and the basis for approval of Plaintiff's termination. (DSOF ¶ 58-127, 178-182, 188-189)  Plaintiff would have been terminated without regard to her race, which is the only adverse employment action. (DSOF ¶ 189, 191)  Plaintiff and the other probationary instructors were warned by Defendant Hemming that the failure to follow the rules could lead to dismissal. (DSOF ¶ 177)

There is no evidence to support a claim of pretext here.  To demonstrate pretext, a party must show that the reason is a lie and completely untrue as opposed to a mistaken determination. *Vasquez v. Kitsap County*, 2009 WL 973335, * 10 (W.D. Wa. 2009), *aff'd*, 379 Fed. Appx. 680 (9th Cir. 2010); *see Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir.1995) (pretext does not simply mean a "mistake," but rather "a lie, specifically a phony

---

[3] Incident Reports are not a disciplinary tool, but serve as documentation of written warnings of a violation of policy. (DSOF ¶ 17)  Incident Reports are not made part of an employee's personnel file. (DSOF ¶ 18)

9

reason for some action"). The Supreme Court has made clear it is not unlawful to discharge or treat an employee differently based upon substantively incorrect information. *Waters v. Churchill*, 511 U.S. 661, 679 (1994) (plurality opinion); *Connick v. Myers*, 461 U.S. 138, 146-147 (1983).

Plaintiff alleged in her complaint that she did not receive written performance evaluations during her probationary period as specified in the policies. It is not uncommon that employees at the District do not receive the written performance evaluations specified in policies. (DSOF ¶ 130) Plaintiff here received the same self-assessment packet from Defendant Hemming as the other instructors. (DSOF ¶ 132) No instructor in the 2013-14 school year received a written evaluation completed by Defendant Hemming. (DSOF ¶ 133-134) Defendant Hemming herself did not receive a completed written performance evaluation from her supervisor that year. (DSOF ¶ 134) So Plaintiff was treated like all of the other instructors by Defendant Hemming.

Plaintiff alleged that she alone was singled out and treated differently than her co-workers, including the other African-American instructor. (DSOF ¶ 145) A "class of one" equal protection claim is based upon unique treatment rather than membership in a protected class. *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008). The "class of one" theory, however, does not apply to public employment decisions as to an individual employee. *Engquist v. Oregon Dept. of Agric.*, 553 U.S. 591, 605, 607–08 (2008). Plaintiff being singled out reflects that it was not due to race as Plaintiff was not the only African-American instructor.

10

The claim of disparate treatment against Defendant Hemming should be dismissed as there is no evidence to support a finding of intentional discrimination due to race.

**C. There Was No Retaliation For Opposing Racial Discrimination**

As explained above, there is no *Monell* liability of the District demonstrated. This test also applies to the claim of retaliation. *Schiff v. City and County of San Francisco*, 528 Fed. Appx. 743, 746 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 935 (2014). No policy or practice of retaliation for opposing discrimination has been demonstrated. The retaliation claim lacks merit as well so it should be dismissed as to both Defendants.

To establish a retaliation claim in this public employment context, a plaintiff must show: (1) involvement in protected activity; (2) an adverse employment action and (3) a causal link between the two. *See Emeldi v. University of Oregon*, 673 F.3d 1218, 1223 (9th Cir. 2012), *amended in* 698 F.3d 715, (9th Cir. 2012), *cert. denied*, 133 S.Ct. 1997 (2013). At that point, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action and if that burden is met, plaintiff must demonstrate that the reason given was a pretext. *Id*. at 1224. A defendant can also succeed by establishing a "same decision" defense even if the employer had not considered the illegal factor. *Vasquez v. Kitsap County*, 2009 WL 973335, *8 (W.D. Wa. 2009), *aff'd*, 379 Fed. Appx. 680 (9th Cir. 2010).

"Ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute a protected activity." *International Healthcare Exchange v. Global Healthcare Exchange, LLC*, 470 F.Supp.2d 345, 357 (S.D.N.Y. 2007); *see also Ochei v. Coler/Goldwater Memorial Hospital*, 450 F.Supp.2d 275, 287 (S.D.N.Y.

11

2006) (where plaintiff made complaints to her employer but never alleged "that she was the victim of discrimination" so her "complaints [were] not a protected activity").

In analyzing the retaliation claim under § 1981 it is important to recall that the statute only applies to racial discrimination. *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613 (1987); *Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001). Plaintiff never made a claim of racial discrimination whether verbally or in an internal EEO complaint. (DSOF ¶ 143-144) As such she was not engaged in protected activity of opposing racial discrimination, so no retaliation claim can be maintained. Absent knowledge of a complaint alleging or opposing racial discrimination, the retaliation claim must fail.

As pointed out above, the actions of Defendants were supported by legitimate reasons and Plaintiff cannot produce evidence to demonstrate that such reasons are a pretext for racial discrimination or retaliatory motive.

Plaintiff cannot allege a claim of retaliation under the § 1983 cause of action because claims of workplace retaliation are outside of the scope of equal protection. *Brown v. Contra Costa County*, 2013 WL 1091844, *1, n. 1 (N.D. Cal. 2013); *see, e.g., Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *see also Sizemore v. City of Dallas*, 443 F.Supp.2d 1201, 1204–05 (D. Or. 2009) (holding based on reasoning in decisions from the First, Second, Sixth, Seventh, and Tenth Circuits).

The retaliation claim under § 1981 and § 1983 for equal protection violation should be dismissed as to both Defendants.

## II. THERE IS NO VALID CLAIM FOR FIRST AMENDMENT RETALIATION

Plaintiff asserted a claim under § 1983 for alleged retaliation for the exercise of Plaintiff's First Amendment right to free speech.

### A. The District Is Not Liable For Alleged First Amendment Retaliation

Plaintiff has produced no evidence of a policy or widespread practice of retaliation for the exercise of an employee's First Amendment rights, but instead asserts that she was singled out. (DSOF ¶ 146) Plaintiff only points to herself which is insufficient to support a constitutional violation under *Monell*. *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("Plaintiffs cannot satisfy the requirement of a longstanding practice or custom, because they allege to the contrary that a county official has singled them out for unique treatment"). As was true of the racial discrimination claim discussed above, there is no evidence to show that a final policymaker was aware of any alleged First Amendment protected activity and committed an act of retaliation for such protected activity. (DSOF ¶ 187-189, 191) There is also no evidence to support ratification. (DSOF ¶ 187-189, 191)

The District should be dismissed from the § 1983 claim based upon alleged First Amendment retaliation.

### B. Defendant Hemming Did Not Engage In First Amendment Retaliation

To prevail on a First Amendment claim in a public employment context, a plaintiff must prove the following five elements: (1) that they spoke on a matter of public concern; (2) that they spoke as private citizens rather than as public employees; (3) that their protected speech was a substantial or motivating factor in Defendants' adverse employment actions; (4) that Defendants had no adequate justification for treating them differently from

13

other members of the general public; and (5) that Defendants would not have taken the adverse employment actions in the absence of their protected speech. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 708–09 (9th Cir. 2009). The plaintiff bears the burden to prove that the speech addressed an issue of public concern, that the speech was spoken in the capacity of a private citizen and not a public employee, and that the protected speech was a substantial or motivating factor in an adverse employment action. *Eng v. Cooley*, 552 F.3d 1062, 1070-1071 (9th Cir. 2009). If the plaintiff satisfies the first three prongs of the test, then the burden shifts to the employer to show that under the balancing test the state's administrative interests outweigh the employee's First Amendment rights and/or, even if the employer fails the balancing test, that it would have reached the same decision in the absence of the employee's protected speech. *Id*. at 1071-72 (9th Cir. 2009).

Whether speech is about a matter of public concern is a question of law for the court which looks at the content, form and context of a given statement. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 709 (9th Cir. 2009). Speech that deals with individual personnel disputes and grievances is not of public concern. *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012). Where speech is directed to an employee's supervisor and inside the governmental agency, this weighs against finding protected speech. *Desrochers v. City of San Bernardino*, 572 F.3d 703, 7014 (9th Cir. 2009). The context of speech boils down to determining whether the speech seeks to bring to light actual or potential wrongdoing, or is it animated by a dissatisfaction with one's employment situation. *Id*. at 715.

14

To this end, Plaintiff claims that in September 2013 with Defendant Hemming and Hemming's supervisor (Kristina Scott) and again in October 2013 with Hemming's supervisor Scott, she questioned the legality of an alleged directive from Defendant Hemming that Plaintiff must tell students in Plaintiff's class they could not ever speak Spanish in the student lounge. (DSOF ¶ 148-151, 156, 160-161)  Plaintiff passed along the directive to her entire class, most of whom were Hispanic. (DSOF ¶ 152)  The directive resulted from a complaint about specific students prohibited bullying another student while speaking Spanish in the student lounge. (DSOF ¶ 147, 151, 155-156)

Defendants accept that Plaintiff's speech (as alleged although disputed) to Defendant Hemming and Kristina Scott about problems with the alleged directive for her students not to speak Spanish in the student lounge could qualify as speech on matters of public concern. (DSOF ¶ 148-151, 156, 160-161)  However, Plaintiff's speech to and with Defendant Hemming and Kristina Scott regarding Hemming's management of Plaintiff and the Incident Reports written up by Hemming on Plaintiff were <u>not</u> on matters of public concern. (DSOF ¶ 67-71, 83-86, 101-104, 108, 111, 160-164)  They were unprotected personnel disputes.  Plaintiff's statements about the 90/90 report and where facial training would occur related to Plaintiff's teaching of her cosmetology class and so were also not matters of public concern. (DSOF ¶ 165-176)

In determining whether speech is done as an employee, the inquiry is a practical one informed by the job description and actual duties performed. *Oyarzo v. Tuolumne Fire District*, 955 F. Supp. 2d 1038, 1060 (D. Ariz. 2013). Plaintiff's speech with Defendant Hemming and Kristina Scott regarding Hemming's management of Plaintiff and the

15

Incident Reports written up by Hemming on Plaintiff were done as an employee not a citizen. Plaintiff's statements about the 90/90 report and where facial training would occur related to Plaintiff's teaching of her cosmetology class. (DSOF ¶ 165-176) Because her statements related to her job responsibilities, they were not protected.

Plaintiff's First Amendment claim based upon her speech against the Spanish prohibition in the student lounge still fails due to an absence of any causal nexus to any adverse employment action. Plaintiff complained about the directive in mid-September 2013 in a meeting with Defendant Hemming and Kristina Scott. (DSOF ¶ 160) Plaintiff then in late October 2013 had a meeting just with Scott about unrelated issues and mentioned the Spanish directive in passing. (DSOF ¶ 161) In January 2014, Defendant Hemming recommended that Plaintiff be terminated. (DSOF ¶ 178-181) Plaintiff was not given any reason for her termination, so she is speculating it was because of her opposition to the Spanish directive. (DSOF ¶ 144, 190) When Hemming recommended Plaintiff's termination, none of the reasons provided related to the Spanish directive or any other speech which might be considered protected activity. (DSOF ¶ 178-184, 187-189, 191)

The causal link does require knowledge of the prior protected activity. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006) (no liability for retaliation if unaware of protected activity). There is no evidence that administrative officials who approved Plaintiff's termination were aware of any protected activity. (DSOF ¶ 180-184, 187-189, 191) Assuming there is knowledge of the protected activity, temporal proximity can provide the basis as part of a prima facie case for showing that protected activity was the motivating basis for retaliation. However, in *Swan v. Bank of America*, 360 Fed. Appx.

903, 906 (9th Cir. 2009), the Ninth Circuit held a gap of four months was too remote in time to support a finding of causation based solely upon temporal proximity. The Supreme Court has indicated that temporal proximity must be very close in time to support a prima facie claim of retaliation and cited with approval cases holding that a three month period and a four month period were insufficient to establish causation when proximity is the only evidence. *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001). Here the gap from the September 2013 protected activity and the recommendation for termination was four months. There is no evidence reflecting Plaintiff's statements about the Spanish directive or any other arguable protected speech played any role in Plaintiff's termination. (DSOF ¶ 178-184, 187-189, 191) Even if a prima facie case could be made, the evidence reflects that Plaintiff would have been and was terminated for reasons unrelated to the Spanish directive or any protected speech or activity. (DSOF ¶ 187-189, 191)

Plaintiff's First Amendment claim should be dismissed against Defendant Hemming.

DATED: October 4, 2016.

UDALL SHUMWAY PLC

　　　/s/ David R. Schwartz　　　
David R. Schwartz
Kimberly Davis
1138 North Alma School Road, Suite 101
Mesa, AZ  85201
*Attorneys for Defendants*

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2016, I electronically filed the attached document using ECF for filing and transmitted the document as follows:

By mail to:

Schaun Owens
16808 N. 20th Street
Phoenix, AZ  85022
Plaintiff

/s/ *Kimberly Kershner*
Kimberly Kershner

4678787.1 \109883-5\

18