# EXHIBIT 3

1

# UDALL | SHUMWAY
COUNSELORS AT LAW SINCE 1965

2  1138 NORTH ALMA SCHOOL ROAD, SUITE 101
   MESA, ARIZONA 85201

3  Telephone: 480.461.5300 | Fax: 480.833.9392

4  David R. Schwartz - #009264
   das@udallshumway.com

5  Kimberly R. Davis - # 030210
   krd@udallshumway.com

6  Attorney for Defendants Maricopa County Community

7  College District, Maricopa Skill Center and Lisa Hemming

8  ## UNITED STATES DISTRICT COURT

9  ## DISTRICT OF ARIZONA

10

| | |
|---|---|
| 11  Schaun Owens, | NO.  CV-15-01769-PHX-SPL |
| 12           Plaintiff, | |
| 13  v. | **AFFIDAVIT OF CHANTAL LUGO** |
| 14 | |
| 15  Maricopa County Community College District, Maricopa Skill Center, and Lisa | |
| 16  Hemming, | |
| 17           Defendants. | |
| 18 | |

19

20  State of Arizona        )
                            ) s s

21  Maricopa County         )

22      Chantal Lugo, upon her oath, states:

23      1. I am over the age of eighteen and I am competent to testify.

24
25      2. I state the matters herein of my own personal knowledge unless otherwise stated.

26      3. I have a Masters in Public Administration.

27

28

4. I am currently employed by the Maricopa County Community College District. ("District").

5. Gateway Community College is one of the several community colleges operated by the District. A division of the Gateway Community College is the Maricopa Skill Centers.

6. I have served as the Human Resource Director for Gateway Community College since October 14, 2014.

7. As the Human Resource Director, I have access to the records of Gateway Community College and the District regarding its employees. Those records are kept in the ordinary course of the operation and business of Gateway Community College and the District.

8. The District's records for Schaun Owens reflect that in October 2011, Ms. Owens returned to Maricopa Skill Centers as a part-time temporary Cosmetology Associate Instructor assigned to work at the Cutting Edge Style Academy ("CESA"). Ms. Owens remained in that position through May 2013.

9. Part-time instructors for the Maricopa Skill Centers are considered at-will employees, so there was no probationary period as they could be terminated for any lawful reason.

10. The District's Staff Policy Manual is available on-line to all employees or anyone on the District's website. The Staff Policy Manual includes the Maricopa & EMCC Southwest Skill Centers Policies applicable to employees of the Maricopa Skill Centers and Estrella Mountain Community College Southwest Skill Center.

11.  Probationary employees are not permitted to file a grievance under the District's policies.  Policy C-2(C)(1)(c).  Under the grievance procedure policy, the parties to a grievance can engage in Interest Based Negotiation.  Policy C-2(C)(1)(m).  A true and accurate copy of these policy provisions is attached hereto as Exhibit A.

12. Probationary employees can be terminated or non-renewed for any or no reason. There is no requirement of just cause as they are at-will employees.

13. Probationary employees are not subject to progressive discipline under District policies on corrective action.  Policy C-4(B).  A true and accurate copy of these policy provisions is attached hereto as Exhibit B.

14. An Incident Report does not ever become part of an employee's personnel file.  If formal discipline is entered then an Incident Report can be part of an employee's disciplinary file maintained by the District's Human Resources.

15. The District has adopted a policy prohibiting discrimination by its employees and students based upon race, sex and other specified criteria.  These policies are reflected in, among other places, the Staff Policy Manual available to anyone on the District's website.

16. The District enforces its anti-discrimination policy through a process for investigating and determination of complaints of discrimination.  If discrimination is found, sanctions can be imposed against the offending persons.  Discrimination complaints at Gateway Community College by employees go to the Vice President of Administrative Services, who is required to promptly investigate the complaint and make findings, conclusions and recommendations to the College's President. The

3

College President can adopt, reject or modify the proposed findings and conclusions. The final written decision is made by the College President and issued to the complainant. The complainant has a right to ask for reconsideration of the written decision.

17. An internal EEO complaint alleging discrimination based upon protected criteria such as race can be submitted by any employee, including those who are on probation.

18. The Northwest Campus of the Maricopa Skill Center first opened and became operational for the 2013-14 school year. The instructors and staff began work in July 2013 as temporary part-time at-will employees.

19. Effective August 5, 2013, Schaun Owens was hired as a new full-time Cosmetology Associate Instructor at the Northwest Campus. To facilitate Ms. Owens doing training and some work before this date, Ms. Owens was hired in July 2013 as a part-time temporary Cosmetology Associate Instructor.

20. In addition to Ms. Owens, the other full-time Cosmetology Associate Instructors hired to work at the new Northwest Campus were: Carolyn Main (who was also known as Carolyn Cardwell); Robert Wood and Toni Trott.

21. Ms. Owens and the three other Cosmetology Associate Instructors at the Northwest Campus were all placed on one year's probation when they were hired effective in August 2013.

22. An employee is shown their written performance evaluation prepared by their supervisor and the employee signs off on the evaluation form. The performance

4

evaluation paperwork is then sent to the District's HR Solutions Center to be part of the employee's personnel file.

23. The Maricopa Skill Centers' Policies were amended because the Maricopa Skill Center employees were going to be removed as a separate employee group and become part of the District's classified and unclassified employee groups. An employee such as Plaintiff Schaun Owens, who was an Associate Instructor at the Maricopa Skill Center, would have been placed within the Management, Administrative & Technological ("MAT") employee group. The amendments were supposed to go into effect on November 1, 2013, but the amendments were not being followed as of February 2014. District human resources advised that the old policies should be followed until the completion of a Classification and Compensation study. This study was not complete as of February 2014.

24. Under the proposed amendments the provision for a four month and eighth month written evaluation of probationary employees was removed from the previous policies. The new provision only discusses an annual evaluation. Exhibit 23 to Schaun Owens' deposition is a true and accurate copy of those amended policies which were supposed to go into effect on November 1, 2013 but did not go into effect until 2014 as set forth above.

. . .

. . .

5

25. I swear subject to the laws of perjury that the above statements are true and correct to

the best of my knowledge and recollection.

DATED: _Sept 22_ , 2016.

_Chantal Lugo_
Chantal Lugo

Subscribed and sworn before me by Chantal Lugo this 22ND day of _September_, 2016.

_Jane Anne Buri_
Notary Public

My commission expires:
3/14/2018

Notary Public State of Arizona
Maricopa County
Jane Anne Buri
My Commission Expires 03/14/2018

4684351.1 \109883-5\September 22, 2016

6

# EXHIBIT A

 **MARICOPA COMMUNITY COLLEGES®**

**STAFF POLICY MANUAL**

| Policy C-2 | GRIEVANCE PROCEDURE | | |
|---|---|---|---|
| Effective Date:<br>05/01/2013 | Applicable Law/Statute:<br>None | Source Doc/Dept:<br>All-CPD/HR | Authorizing GB Pol./Reg.<br>GB Pol. 3.3 |

**A. PURPOSE.** To set out MCCCD's procedure for eligible employees to seek redress for an alleged misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation which affects the employee.

**B. APPLICABILITY.** All Regular, Board-approved employees.

**C. POLICY.**

    1. Ground Rules.

        a. The District's formal grievance procedure provides a process for employees to voice complaints concerning specific issues related to their employment. The objective is to improve employee-management relations through a prompt and fair method of resolving problems. All actions at any stage of the grievance procedure shall be characterized by fairness, frankness, courtesy, and respect for the dignity of each individual involved. Employees have the right to file a grievance without prejudice; and the employee, their representatives, and their witnesses shall not be subjected to corrective action, harassed, or otherwise unfairly dealt with as a result.

        b. A "grievance" for purposes of this policy and procedure is an allegation by an eligible employee of a misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation, which affects the employee. A "grievant" is an eligible employee claiming such a misapplication, misinterpretation, or violation has occurred. If more than one employee claims they have been similarly affected by an alleged misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation, they may file a group grievance hereunder.

        c. All employees who have successfully completed their initial probationary period are eligible to file a grievance. All employees are encouraged to informally discuss employment concerns with their immediate supervisor, the employee's chain of command, or with the College or District Human Resources Department, whichever is most appropriate given the issue. Every effort should be made to resolve issues at the lowest level possible.

        d. This grievance procedure is the internal remedy available to eligible employees for resolving grievances. This does not preclude any external remedies available to the employee. Complaints involving illegal discrimination, including allegations of sexual harassment or a violation of the ADA, are resolved pursuant to Administrative Regulation 5.1 and not this grievance procedure. Appeals of employee discipline are resolved pursuant to the applicable employee group manual and not this grievance procedure.

e. A grievant may be represented at any grievance level by a fellow MCCCD employee of the grievant's choosing. During the grievance hearing the representative shall be permitted to observe and take notes, be permitted a limited right to speak, to include speaking to the policy issue(s) in question, repeating to the administrator points the employee has already made, and explaining to the administrator the significance of points made by the employee. The representative has no right to speak for the employee in response to questions; however may confer with the employee in a confidential manner.

f. All grievance level meetings are closed, private meetings and not meetings of a public body as defined in Title 38, Arizona Revised Statutes.

g. Meetings held under this procedure shall be conducted at a time and place that affords a fair and reasonable opportunity for all persons entitled to be present to attend. The grievant(s), the grievant's representatives, and any necessary witnesses may attend this meeting. Employee(s) and their representative(s) shall be permitted to present oral and written statements during meetings.

h. As a grievance moves from one level to the next, the grievant may not add new considerations to the grievance.

i. Any grievance not initiated or taken by the grievant to the next level within the stated time limits will be considered resolved. Any grievance answer not timely provided to the grievant shall permit the grievant to proceed to the next level in the grievance procedure. Time limits for invoking the next higher level in the grievance procedure shall commence on the date the grievance answer is due. The parties may, by mutual agreement, extend any of the time periods established in this procedure.

j. An employee whose immediate supervisor is a Vice President/College Administrator or College President/Vice Chancellor and who wishes to submit a formal written grievance after the Verbal Discussion described in Section C (2) (a.) herein shall proceed to the level which represents the employee's supervisor's supervisor.

k. Documents, communications, and other records dealing with the processing of a grievance will be maintained in a separate grievance file in the District Human Resources office. Confidentiality will be maintained to the extent possible, and a copy will be made available to the employee upon request.

l. Grievants will be allowed reasonable release time to meet with the grievant's representatives and participate in meetings described herein.

m. The District supports and recommends the Interest-Based Negotiations (IBN) approach to the resolution of grievances. This approach encourages the parties to the grievance to meet with a facilitator and together:

   i. Advocate for their interests

   ii. Educate one another on the issues

   iii. Jointly determine objective solution criteria

   iv. Create multiple options before determining possible solutions

   v. Choose the option which best meets the identified interests & criteria

      vi. Build working relationships through conflict resolution

  n. All references to Vice-Presidents, Administrators, Presidents, Vice-Chancellors, the Chancellor, and the Governing Board shall be deemed to include their designees.

  o. The term "Immediate Supervision" as used herein shall be deemed to include all supervisors in the grievant's chain of command up to and including the supervisory position immediately subordinate to the grievant's Vice President/College Administrator.

2. <u>Grievance Procedure.</u>

  a. Verbal Discussion with Immediate Supervision.

    i. An employee with a grievance shall meet with and/or discuss the issue with the employee's immediate supervision within 20 days of the date the employee knew or reasonably should have known of the event giving rise to the issue. If a meeting is to be held it shall be within 10 days of the employee's request.

    ii. The immediate supervision shall provide the employee with a verbal decision during the discussion/meeting or within 10 days after the discussion/meeting.

    iii. If the employee is not satisfied with the verbal response from the immediate supervision, the formal steps which follow may be pursued.

  b. Level I -- Written Grievance to Vice President/College Administrator.

    i. Within 10 days of the reply at the Verbal Discussion level, or if no reply is received, within 15 days after the verbal discussion/meeting, the grievant may submit a formal written grievance, using the District's grievance form, to the grievant's Vice President/College Administrator.

    ii. The Vice President/College Administrator shall hold a meeting to discuss the grievance within 10 days after receipt. The Vice President/College Administrator shall reply in writing to the grievant within five days after the meeting.

    iii. If the grievant is not satisfied with the written answer of the Vice President/College Administrator, the grievance may be submitted to Level II of the grievance procedure.

  c. Level II -- Written Grievance to College President/Vice Chancellor.

    i. Within 10 days of the reply at Level I, or if no reply is received, within 20 days after the submission at Level I, the grievant may submit the grievance, using the District's grievance form, to the grievant's College President/Vice Chancellor.

    ii. The College President/Vice Chancellor shall hold a meeting to discuss the grievance within 10 days after receipt. The College President/Vice Chancellor shall reply in writing to the grievant within 10 days after the meeting.

    iii. If the grievant is not satisfied with the written answer of the College President/Vice Chancellor, the grievance may be submitted to Level III of the grievance procedure.

  d. Level III -- Chancellor.

    i. Within 10 days of the reply at Level II, or if no reply is received, within 20 days after the submission at Level II, the grievant may submit the grievance, using the District's grievance form, to the Chancellor.

       ii. The Chancellor may hold a meeting to discuss the grievance within 15 days after receipt. The Chancellor shall reply in writing to the grievant within 15 days after the meeting.

      iii. If the grievant is not satisfied with the written answer of the Chancellor, the grievance may be submitted to Level IV of the grievance procedure.

e. Level IV – Governing Board.

       i. Within 10 days of the reply at Level III, or if no reply is received, within 20 days after the submission at Level III, the grievant may submit the grievance, using the District's grievance form, to the Governing Board.

      ii. The Governing Board may, at its option, review the evidence and issue a final written decision within 30 days after receipt. The written decision shall be forwarded to the grievant.

      iii. The Governing Board's decision shall be final and binding. If the Governing Board elects not to consider the grievance, the decision of the Chancellor at Level III shall be final and binding.

# EXHIBIT B

 **MARICOPA COMMUNITY COLLEGES®**          **STAFF POLICY MANUAL**

| Policy C-4 | CORRECTIVE ACTION PRINCIPLES | | |
|---|---|---|---|
| Effective Date:<br>05/01/2013 | Applicable Law/Statute:<br>None | Source Doc/Dept:<br>All-CPD/HR | Authorizing GB Pol./Reg.<br>Admin. Reg. 6.7; Policy 3.3 |

A. **PURPOSE.** Successful job performance requires a full and clear understanding of and commitment to job performance expectations and applicable workplace procedures. Supervisors and staff are expected to understand and follow applicable job performance and workplace conduct standards. Supervisors are expected to use, as appropriate, coaching, feedback, performance improvement plans and corrective action to assist and guide employees in resolving unsatisfactory job performance or misconduct that violates MCCCD policies, procedures, or practices.

B. **APPLICABILITY.** All Regular, Board-approved employees who have completed their initial probationary periods.

C. **POLICY.**

1. <u>Corrective Action.</u> The term "corrective action" for purposes of this manual includes but is not limited to the actions of coaching and counseling, Initial Corrective Action, Second Corrective Action, and suspension, demotion, and dismissal from employment. The terms "discipline" and "progressive discipline" refer specifically to the actions of suspension, demotion, and dismissal from employment. The following principles are applicable to the corrective action of all MCCCD employees covered by this policy:

   a. Employees shall be advised of expected job performance and workplace conduct, the types of performance and conduct that MCCCD has determined to be unacceptable, and the normal penalties for such unacceptable performance and conduct.

   b. Immediate attention shall be given to policy infractions.

   c. Corrective action should usually be progressive, depending on the severity of the offense.

   d. An employee's immediate supervisor and all supervisors up to and including the College President/Vice-Chancellor shall be responsible for administering corrective action.

2. <u>Records of Corrective Action.</u> All original records of corrective action shall be maintained in the employee's personnel file at District HR in accordance with MCCCD's public record retention and disposition policies.

3. <u>Expected Job Performance and Workplace Conduct.</u> The job performance and workplace conduct expected of MCCCD employees and the types of performance and conduct MCCCD has determined to be unacceptable are contained in part in <u>Administrative Regulation 6.7</u> and in the table in Policy A-4 – Employment Standards (this is not an exhaustive list) and in various other sections of this manual. Employees are also notified of expected job performance and unacceptable conduct through:

     a. New Employee Orientation, which includes a review of MCCCD policies, employee policies, and safety and security procedures;

     b. The employee's college's/division's orientation, which includes a review of the college's/division's standard operating procedures and the employee's position-specific performance expectations;

     c. Employee training and annual disclosure statements;

     d. MCCCD's Internet site; and

     e. Documented coaching, counseling, and progressive corrective action.

4. <u>Progressive Corrective Action.</u> The specific progressive corrective action principles which follow are applicable to the corrective action of Regular, Board-approved employees. Separate principles and rules apply to the corrective action of other employees.

     a. Offenses. As shown in the table in Policy A-4, violations of generally expected job performance and specific rules of conduct are grouped into three separate categories by *type of offense* – A) Conduct, B) Performance, and C) Attendance. Each of these three categories is then separated into two groups based on the *seriousness of the offense* - Group One (more serious) and Group Two (less serious). Examples of these three categories and two groups of offenses are shown in the table in Policy A-4. This is not an exhaustive list.

     b. Groups of Offenses. Offenses are divided into two groups based on the seriousness of the offense. Group One offenses are the most serious of offenses and are corrected under a progressive corrective action schedule as shown in section C (6) below, which may result in "Any disciplinary action, including dismissal." Group Two offenses are less serious than Group One offenses, yet are policy infractions which normally require formal corrective action under a progressive corrective action schedule as shown in section C (6) below, which begins with an "Initial Corrective Action" and progresses to "Any disciplinary action, including dismissal."

     c. Types of Offenses. The type of offense determines how multiple policy infractions shall be dealt with for progressive corrective action purposes. Infractions of the same type are deemed to be related for progressive corrective action purposes. Related and unrelated offenses are treated differently for progressive corrective action purposes as explained in section C (6) below.

     d. Force and Effect. Each record of corrective action shall remain in force and effect for progressive corrective action purposes as follows:

          i. Initial Corrective Action – up to12 months

          ii. Second Corrective Action – up to 24 months

          iii. Suspensions without pay, demotions, and reductions in pay – up to 36 months

     Thereafter, each record of corrective action shall cease to have force and effect for progressive corrective action purposes, provided no intervening corrective action occurs during the 12, 24, or 36 month period following the respective corrective action. Records of corrective action can be removed from force and effect for corrective action purposes

against an employee prior to the maximum period noted above upon written application of the employee and/or approval of the correcting supervisor. Note: Corrective action notices which no longer have force and effect for corrective action purposes may be required to be kept in the employee's personnel file (See Policy B-10 – Personnel Files).

5. Just Cause. Board-approved employees who have successfully completed their initial probationary period may only be disciplined for just cause. "Just cause" is a burden or standard of proof that MCCCD must meet in order to support the discipline of a Board-approved employee. In order to sustain the discipline of a Board-approved employee, all of the following criteria must be met:

   a. The employee knew or reasonably should have known that the employee's conduct could lead to disciplinary action;

   b. The disciplinary action is the result of job performance, violation of law, violation of established MCCCD policy or procedure, and/or a violation of established college/division/department policy or procedure;

   c. Management conducted a fair and objective investigation in accordance with MCCCD policy and the law;

   d. The investigation produced sufficient evidence or proof to reasonably support the failure of performance or violation as alleged;

   e. The disciplinary action taken was consistent with disciplinary action for similar or comparable conduct or was otherwise reasonable under the circumstances.

6. Progressive Corrective Action Schedules.

### GROUP ONE OFFENSES

| FIRST OFFENSE | Disciplinary action, including dismissal from employment |
|---|---|

### GROUP TWO OFFENSES

| FIRST OFFENSE | Initial Corrective Action |
|---|---|
| SECOND OFFENSE | Second Corrective Action |
| THIRD OFFENSE | Disciplinary action including dismissal from employment |

7. Progressive Corrective Action Procedure.

   a. Corrective Action Ground Rules.

      i. All meetings held under this procedure shall be conducted at a prearranged time and place that affords a fair and reasonable opportunity for all persons entitled to be present to attend.

      ii. At the time the meeting date is established, the employee will be informed that this is a corrective action discussion as set forth in this policy manual. The supervisor will provide

the employee sufficient time to locate a representative to accompany the employee to this meeting. The representative must be a fellow MCCCD employee.

iii. The representative shall be permitted a brief time prior to the meeting to confer with the employee. During the meeting the representative shall be permitted to observe and take notes and be permitted a limited right to speak, to include repeating to the management representative points the employee has already made, explaining to the management representative the significance of points made by the employee, and occasionally conferring with the employee in a confidential manner. The representative has no right to bargain at the meeting, no right to make the employee's willingness to cooperate contingent on a guarantee of leniency, and no right to speak for the employee in response to questions. Reasonable breaks shall be provided.

iv. As the corrective action moves from one step to the next, the supervisor or the employee may not add new considerations to the original action.

v. Employees have the right to request representation pursuant to this procedure without prejudice and all employees who participate in this process shall not be subjected to corrective action, harassed, or otherwise unfairly dealt with as a result.

vi. Employees and their representatives will be allowed reasonable release time to meet with management.

b. Initial Corrective Action Discussion

i. The Initial Corrective Action discussion will occur within a reasonable time of when the supervisor becomes aware of the unsatisfactory job performance/conduct.

ii. All parties will be notified of who will be attending the meeting.

iii. At this meeting the supervisor will provide the employee, in writing, with a draft Notice of Corrective Action (on the MCCCD form) specifying the unsatisfactory job performance/conduct, the required job performance/conduct, and the consequences of failing to meet the required performance/conduct. The employee and supervisor will discuss a plan of action with specific goals designed to produce the desired performance/conduct. After the meeting the supervisor will complete the document and provide the employee with the opportunity to sign the document and with a copy. This will not be placed in the employee's official personnel file at the DO.

c. Second Corrective Action Discussion

i. If, after the Initial Corrective Action discussion, the employee fails to improve his/her job performance/conduct (in a reasonable amount of time) as stated in the Initial Corrective Action plan, the immediate supervisor will again schedule a private meeting with the employee regarding his/her lack of improvement. All parties will be notified of who will be attending the meeting.

ii. The emphasis of this meeting will continue to be corrective in intent. The supervisor will discuss job performance/conduct not yet being met from the Initial Corrective Action Plan

iii. The supervisor will present the employee with a draft Notice of (Second) Corrective Action (on the MCCCD form) specifying the unsatisfactory job performance/conduct, the

required job performance/conduct, and the consequences of failing to meet the required performance/conduct. The employee and supervisor will discuss a plan of action with specific goals designed to produce the desired performance/conduct. After the meeting the supervisor will complete the document and provide the employee with the opportunity to sign the document and with a copy.

 iv. At the employee's request, upon proof of satisfactory performance after a reasonable amount of time, a letter of resolution will be placed in the employee's official personnel file at the DO. A copy will be retained by the supervisor and the employee.

d. Multiple Policy Infractions.

 i. Multiple policy infractions should be dealt with by following the progressive corrective action procedure set forth below:

  a) Multiple offenses which are unrelated are progressively corrected in the group in which the offense is classified;

  b) Multiple offenses which are related are progressively corrected regardless of the group in which the offense is classified and regardless of the order in which the offenses occurred; and

  c) Multiple offenses which are closely related in time, even if unrelated or in different groups hereunder, may be combined to result in corrective action which is more or less than the severity of the total sum of the separate offenses.

 ii. Examples of progressive corrective action and the difference between the treatment of related and unrelated offenses as shown in the table in Policy A-4 are as follows:

  a) If, as a first offense, an employee commits Group Two, Conduct Offense A (5), " Failure of an employee who is authorized to drive MCCCD vehicles to report to the employee's immediate supervisor a moving traffic violation occurring in the employee's private vehicle during non-work time," the employee would normally receive an Initial Corrective Action (ICA). If within 12 months the employee commits an unrelated Group Two offense (not a Conduct Offense, but a Performance or Attendance offense), the employee would normally receive an ICA. If, however, the second Group Two offense was related to the first offense, for example, Conduct Offense A (2), "Unknowing violation of MCCCD's Hiring of Relatives policy or Administrative Regulation 4.18 - Consensual Relationships policy," the employee would receive a Second Corrective Action (SCA).

| Type | Group 1 | Group 2 |
|---|---|---|
| Conduct | | 1-ICA; 2-SCA |
| Performance | | 2-ICA |
| Attendance | | |

  b) If, as a first offense, an employee commits Group One, Conduct Offense A (3), " Willful and Intentional commitment of acts of fraud, theft, embezzlement, misappropriation, falsification of records or misuse of MCCCD funds, goods,

property, services, technology or other resources," the employee would normally be disciplined up to termination of employment. If the employee is not terminated but instead suspended without pay (SWOP) and if, within 36 months, the employee commits an unrelated Group Two offense, for example, Performance Offense B (1), "Neglect of duty. . .," the employee would receive an ICA. If, however, the second offense was related to the first offense, such as Group Two, Conduct Offense A (5), " Failure of an employee who is authorized to drive MCCCD vehicles to report to the employee's immediate supervisor a moving traffic violation occurring in the employee's private vehicle during non-work time," the employee would receive an SCA.

| Type | Group 1 | Group 2 |
|-------------|---------|---------|
| Conduct | 1-SWOP | 2-SCA |
| Performance | | 2-ICA |
| Attendance | | |