# EXHIBIT 9

# UDALL|SHUMWAY
COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax: 480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Kimberly R. Davis - # 030210
krd@udallshumway.com
Attorney for Defendants Maricopa County Community
College District, Maricopa Skill Center and Lisa Hemming

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Schaun Owens,<br><br>              Plaintiff,<br><br>v.<br><br>Maricopa County Community College District, Maricopa Skill Center, and Lisa Hemming,<br><br>              Defendants. | NO.  CV-15-01769-PHX-SPL<br><br>AFFIDAVIT OF MARIA BELLINO |

State of Arizona          )
                          ) s s
Maricopa County           )

     Maria Bellino, upon her oath, states:

1. I am over the age of eighteen and I am competent to testify.

2. I state the matters herein of my own personal knowledge unless otherwise stated.

3. I am currently employed by the Maricopa County Community College District.

     ("District").

4. I have served from October 21, 2013 to May 9, 2016, as a Consultant in the District's HR Solutions Center.

5. As a Consultant, I have access to the records of the District regarding its employees. Those records are kept in the ordinary course of the operation and business of the District.

6. The District's Staff Policy Manual is available on-line to all employees or anyone on the District's website. The Staff Policy Manual includes the Maricopa & EMCC Southwest Skill Centers Policies applicable to employees of the Maricopa Skill Center and Estrella Mountain Community College Southwest Skill Center.

7. Probationary employees are not permitted to file a grievance under the District's policies. Policy C-2(C)(1)(c). A true and accurate copy of these policy provisions is attached hereto as Exhibit A.

8. Probationary employees can be terminated for any reason. There is no requirement of just cause for at-will employees.

9. Probationary employees are not subject to progressive discipline under District policies on corrective action. Policy C-4(B). A true and accurate copy of these policy provisions is attached hereto as Exhibit B.

10. An Incident Report does not ever become part of an employee's personnel file. If formal discipline is entered then an Incident Report can be part of an employee's disciplinary file maintained by the District's HR Solutions Center.

11. The Governing Board adopts policies, which are available on-line to anyone on the District's website.

2

12. Under Board Policy 2.0, the Governing Board declared that: "The Chancellor shall not cause or allow any practice, activity, decision, or organizational circumstances that are unlawful, imprudent, or in violation of commonly-accepted higher education, business, and professional ethics and practices."   A true and accurate copy of that policy is attached hereto as Exhibit C.

13. The District, through the Chancellor, has adopted Administrative Regulations applicable at all colleges within the District.  These regulations are published on the District's website and referenced in the Staff Policy Manual.

14. The District has adopted a policy prohibiting discrimination by its employees and students based upon race, sex and other specified criteria.  These policies are reflected in, among other places, the Staff Policy Manual available to anyone on the District's website.  Attached hereto as Exhibit D is a true and accurate copy of Administrative Regulations 5.1.1 to 5.1.5 which reflect the policy against discrimination based upon protected criteria including race.

15. The District enforces its anti-discrimination policy through a process for investigating and determination of complaints of discrimination.  If discrimination is found, sanctions can be imposed against the offending persons.

16. An internal EEO complaint alleging discrimination based upon protected criteria such as race can be submitted by any employee, including those who are on probation.

17. Most full-time non-faculty employees are supposed to receive an annual written performance evaluation under applicable District policies.

3

18. Even when District policies require an annual written performance evaluation because of the workload of supervisors, they are sometimes not done.

19. An employee is shown their completed written performance evaluation prepared by their supervisor and the employee signs off on the evaluation form. The performance evaluation paperwork is then sent to the District's HR Solutions Center to be part of the employee's personnel file.

20. As of January 30, 2014, Kristina Scott (Director Extended Campuses for Maricopa Skill Center), CJ Wurster (Interim Director Maricopa Skill Center), John Naughton (Gateway Community College's Assistant Director Administrative and Support Services for Human Resources), Anthony Asti (Gateway Community College's Interim Vice President for Administrative Services), and Steven Gonzales (Gateway Community College's President) all supported the request for termination of Plaintiff. A true and accurate copy of the e-mail string reflecting such approvals is attached hereto as Exhibit E.

21. I was assigned to evaluate and assist with the process for seeking termination of Schaun Owens.

22. The basis of the request for termination was set forth in the documentation sent on January 13, 2014 by Lisa Hemming (see Exhibit E at MCCCD-O 124-125) and forwarded on to the persons evaluating the request for termination (Scott, Wurster, Naughton, Asti, and Gonzales). The reasons set forth therein were: (1) giving permission for West-MEC students to leave campus; (2) not adhering to the curriculum; (3) excessive tardiness; (4) not adhering to State Board regulations on

4

sanitation; playing videos for students and giving hours for this time; and (5) matters set forth in Incident Report for sleeping on the job, pizza party, students in instructor's office, and excessive tardiness.   A true and accurate copy of the supporting documentation received by me from John McNaughton and Lisa Hemming is attached hereto as Exhibit F.

23. I recommended to Judy Castellanos, my Supervisor, that the HR Solution Center should approve and support the proposed termination of Schaun Owens.  This reflected my conclusion that the proper procedures for the termination had been completed.  Based upon documentation and my interview of Hemming, I saw no evidence that Owens was impermissibly singled or treated differently than other of her coworkers.

24. I did not take into consideration Ms. Owens' race in arriving at my conclusions.  I did not see any indication that the recommendation by Hemming or its approval and support by administrators was influenced by Ms. Owens' race.

25. I swear subject to the laws of perjury that the above statements are true and correct to the best of my knowledge and recollection.

DATED: _September 28_ 2016.

_Maria Bellino_
Maria Bellino

Subscribed and sworn before me by Maria Bellino this _28_ day of _September_ 2016.

5

1

_____
Notary Public

2

3   My commission expires:

4

LE L. DINH
Notary Public - State of Arizona
Pinal County
My Comm. Expires August 10, 2019

5

6

7

8

9   4684708.1 \109883-5\September 27, 2016

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

# EXHIBIT A



**STAFF POLICY MANUAL**

| Policy C-2 | GRIEVANCE PROCEDURE | | |
|---|---|---|---|
| Effective Date: 05/01/2013 | Applicable Law/Statute: None | Source Doc/Dept: All-CPD/HR | Authorizing GB Pol./Reg. GB Pol. 3.3 |

**A. PURPOSE.** To set out MCCCD's procedure for eligible employees to seek redress for an alleged misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation which affects the employee.

**B. APPLICABILITY.** All Regular, Board-approved employees.

**C. POLICY.**

    1. Ground Rules.

        a. The District's formal grievance procedure provides a process for employees to voice complaints concerning specific issues related to their employment. The objective is to improve employee-management relations through a prompt and fair method of resolving problems. All actions at any stage of the grievance procedure shall be characterized by fairness, frankness, courtesy, and respect for the dignity of each individual involved. Employees have the right to file a grievance without prejudice; and the employee, their representatives, and their witnesses shall not be subjected to corrective action, harassed, or otherwise unfairly dealt with as a result.

        b. A "grievance" for purposes of this policy and procedure is an allegation by an eligible employee of a misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation, which affects the employee. A "grievant" is an eligible employee claiming such a misapplication, misinterpretation, or violation has occurred. If more than one employee claims they have been similarly affected by an alleged misapplication, misinterpretation, or violation of a specific provision of an applicable employee policy or Governing Board policy or administrative regulation, they may file a group grievance hereunder.

        c. All employees who have successfully completed their initial probationary period are eligible to file a grievance. All employees are encouraged to informally discuss employment concerns with their immediate supervisor, the employee's chain of command, or with the College or District Human Resources Department, whichever is most appropriate given the issue. Every effort should be made to resolve issues at the lowest level possible.

        d. This grievance procedure is the internal remedy available to eligible employees for resolving grievances. This does not preclude any external remedies available to the employee. Complaints involving illegal discrimination, including allegations of sexual harassment or a violation of the ADA, are resolved pursuant to Administrative Regulation 5.1 and not this grievance procedure. Appeals of employee discipline are resolved pursuant to the applicable employee group manual and not this grievance procedure.

e. A grievant may be represented at any grievance level by a fellow MCCCD employee of the grievant's choosing. During the grievance hearing the representative shall be permitted to observe and take notes, be permitted a limited right to speak, to include speaking to the policy issue(s) in question, repeating to the administrator points the employee has already made, and explaining to the administrator the significance of points made by the employee. The representative has no right to speak for the employee in response to questions; however may confer with the employee in a confidential manner.

f. All grievance level meetings are closed, private meetings and not meetings of a public body as defined in Title 38, Arizona Revised Statutes.

g. Meetings held under this procedure shall be conducted at a time and place that affords a fair and reasonable opportunity for all persons entitled to be present to attend. The grievant(s), the grievant's representatives, and any necessary witnesses may attend this meeting. Employee(s) and their representative(s) shall be permitted to present oral and written statements during meetings.

h. As a grievance moves from one level to the next, the grievant may not add new considerations to the grievance.

i. Any grievance not initiated or taken by the grievant to the next level within the stated time limits will be considered resolved. Any grievance answer not timely provided to the grievant shall permit the grievant to proceed to the next level in the grievance procedure. Time limits for invoking the next higher level in the grievance procedure shall commence on the date the grievance answer is due. The parties may, by mutual agreement, extend any of the time periods established in this procedure.

j. An employee whose immediate supervisor is a Vice President/College Administrator or College President/Vice Chancellor and who wishes to submit a formal written grievance after the Verbal Discussion described in Section C (2) (a.) herein shall proceed to the level which represents the employee's supervisor's supervisor.

k. Documents, communications, and other records dealing with the processing of a grievance will be maintained in a separate grievance file in the District Human Resources office. Confidentiality will be maintained to the extent possible, and a copy will be made available to the employee upon request.

l. Grievants will be allowed reasonable release time to meet with the grievant's representatives and participate in meetings described herein.

m. The District supports and recommends the Interest-Based Negotiations (IBN) approach to the resolution of grievances. This approach encourages the parties to the grievance to meet with a facilitator and together:

   i. Advocate for their interests

   ii. Educate one another on the issues

   iii. Jointly determine objective solution criteria

   iv. Create multiple options before determining possible solutions

   v. Choose the option which best meets the identified interests & criteria

vi. Build working relationships through conflict resolution

n. All references to Vice-Presidents, Administrators, Presidents, Vice-Chancellors, the Chancellor, and the Governing Board shall be deemed to include their designees.

o. The term "Immediate Supervision" as used herein shall be deemed to include all supervisors in the grievant's chain of command up to and including the supervisory position immediately subordinate to the grievant's Vice President/College Administrator.

2. Grievance Procedure.

a. Verbal Discussion with Immediate Supervision.

   i. An employee with a grievance shall meet with and/or discuss the issue with the employee's immediate supervision within 20 days of the date the employee knew or reasonably should have known of the event giving rise to the issue. If a meeting is to be held it shall be within 10 days of the employee's request.

   ii. The immediate supervision shall provide the employee with a verbal decision during the discussion/meeting or within 10 days after the discussion/meeting.

   iii. If the employee is not satisfied with the verbal response from the immediate supervision, the formal steps which follow may be pursued.

b. Level I – Written Grievance to Vice President/College Administrator.

   i. Within 10 days of the reply at the Verbal Discussion level, or if no reply is received, within 15 days after the verbal discussion/meeting, the grievant may submit a formal written grievance, using the District's grievance form, to the grievant's Vice President/College Administrator.

   ii. The Vice President/College Administrator shall hold a meeting to discuss the grievance within 10 days after receipt. The Vice President/College Administrator shall reply in writing to the grievant within five days after the meeting.

   iii. If the grievant is not satisfied with the written answer of the Vice President/College Administrator, the grievance may be submitted to Level II of the grievance procedure.

c. Level II – Written Grievance to College President/Vice Chancellor.

   i. Within 10 days of the reply at Level I, or if no reply is received, within 20 days after the submission at Level I, the grievant may submit the grievance, using the District's grievance form, to the grievant's College President/Vice Chancellor.

   ii. The College President/Vice Chancellor shall hold a meeting to discuss the grievance within 10 days after receipt. The College President/Vice Chancellor shall reply in writing to the grievant within 10 days after the meeting.

   iii. If the grievant is not satisfied with the written answer of the College President/Vice Chancellor, the grievance may be submitted to Level III of the grievance procedure.

d. Level III – Chancellor.

   i. Within 10 days of the reply at Level II, or if no reply is received, within 20 days after the submission at Level II, the grievant may submit the grievance, using the District's grievance form, to the Chancellor.

    ii. The Chancellor may hold a meeting to discuss the grievance within 15 days after receipt. The Chancellor shall reply in writing to the grievant within 15 days after the meeting.

    iii. If the grievant is not satisfied with the written answer of the Chancellor, the grievance may be submitted to Level IV of the grievance procedure.

e. Level IV -- Governing Board.

    i. Within 10 days of the reply at Level III, or if no reply is received, within 20 days after the submission at Level III, the grievant may submit the grievance, using the District's grievance form, to the Governing Board.

    ii. The Governing Board may, at its option, review the evidence and issue a final written decision within 30 days after receipt. The written decision shall be forwarded to the grievant.

    iii. The Governing Board's decision shall be final and binding. If the Governing Board elects not to consider the grievance, the decision of the Chancellor at Level III shall be final and binding.

# EXHIBIT B

 **STAFF POLICY MANUAL**

| Policy C-4 | CORRECTIVE ACTION PRINCIPLES | | |
|---|---|---|---|
| Effective Date:<br>05/01/2013 | Applicable Law/Statute:<br>None | Source Doc/Dept:<br>All-CPD/HR | Authorizing GB Pol./Reg.<br>Admin. Reg. 6.7; Policy 3.3 |

**A. PURPOSE.** Successful job performance requires a full and clear understanding of and commitment to job performance expectations and applicable workplace procedures. Supervisors and staff are expected to understand and follow applicable job performance and workplace conduct standards. Supervisors are expected to use, as appropriate, coaching, feedback, performance improvement plans and corrective action to assist and guide employees in resolving unsatisfactory job performance or misconduct that violates MCCCD policies, procedures, or practices.

**B. APPLICABILITY.** All Regular, Board-approved employees who have completed their initial probationary periods.

**C. POLICY.**

1. Corrective Action. The term "corrective action" for purposes of this manual includes but is not limited to the actions of coaching and counseling, Initial Corrective Action, Second Corrective Action, and suspension, demotion, and dismissal from employment. The terms "discipline" and "progressive discipline" refer specifically to the actions of suspension, demotion, and dismissal from employment. The following principles are applicable to the corrective action of all MCCCD employees covered by this policy:

   a. Employees shall be advised of expected job performance and workplace conduct, the types of performance and conduct that MCCCD has determined to be unacceptable, and the normal penalties for such unacceptable performance and conduct.

   b. Immediate attention shall be given to policy infractions.

   c. Corrective action should usually be progressive, depending on the severity of the offense.

   d. An employee's immediate supervisor and all supervisors up to and including the College President/Vice-Chancellor shall be responsible for administering corrective action.

2. Records of Corrective Action. All original records of corrective action shall be maintained in the employee's personnel file at District HR in accordance with MCCCD's public record retention and disposition policies.

3. Expected Job Performance and Workplace Conduct. The job performance and workplace conduct expected of MCCCD employees and the types of performance and conduct MCCCD has determined to be unacceptable are contained in part in Administrative Regulation 6.7 and in the table in Policy A-4 – Employment Standards (this is not an exhaustive list) and in various other sections of this manual. Employees are also notified of expected job performance and unacceptable conduct through:

a. New Employee Orientation, which includes a review of MCCCD policies, employee policies, and safety and security procedures;

b. The employee's college's/division's orientation, which includes a review of the college's/division's standard operating procedures and the employee's position-specific performance expectations;

c. Employee training and annual disclosure statements;

d. MCCCD's Internet site; and

e. Documented coaching, counseling, and progressive corrective action.

4. <u>Progressive Corrective Action.</u> The specific progressive corrective action principles which follow are applicable to the corrective action of Regular, Board-approved employees. Separate principles and rules apply to the corrective action of other employees.

a. Offenses. As shown in the table in Policy A-4, violations of generally expected job performance and specific rules of conduct are grouped into three separate categories by *type of offense* – A) Conduct, B) Performance, and C) Attendance. Each of these three categories is then separated into two groups based on the *seriousness of the offense* - Group One (more serious) and Group Two (less serious). Examples of these three categories and two groups of offenses are shown in the table in Policy A-4. This is not an exhaustive list.

b. Groups of Offenses. Offenses are divided into two groups based on the seriousness of the offense. Group One offenses are the most serious of offenses and are corrected under a progressive corrective action schedule as shown in section C (6) below, which may result in "Any disciplinary action, including dismissal." Group Two offenses are less serious than Group One offenses, yet are policy infractions which normally require formal corrective action under a progressive corrective action schedule as shown in section C (6) below, which begins with an "Initial Corrective Action" and progresses to "Any disciplinary action, including dismissal."

c. Types of Offenses. The type of offense determines how multiple policy infractions shall be dealt with for progressive corrective action purposes. Infractions of the same type are deemed to be related for progressive corrective action purposes. Related and unrelated offenses are treated differently for progressive corrective action purposes as explained in section C (6) below.

d. Force and Effect. Each record of corrective action shall remain in force and effect for progressive corrective action purposes as follows:

   i. Initial Corrective Action – up to 12 months

   ii. Second Corrective Action – up to 24 months

   iii. Suspensions without pay, demotions, and reductions in pay – up to 36 months

Thereafter, each record of corrective action shall cease to have force and effect for progressive corrective action purposes, provided no intervening corrective action occurs during the 12, 24, or 36 month period following the respective corrective action. Records of corrective action can be removed from force and effect for corrective action purposes

against an employee prior to the maximum period noted above upon written application of the employee and/or approval of the correcting supervisor. Note: Corrective action notices which no longer have force and effect for corrective action purposes may be required to be kept in the employee's personnel file (See Policy B-10 – Personnel Files).

5. <u>Just Cause.</u> Board-approved employees who have successfully completed their initial probationary period may only be disciplined for just cause. "Just cause" is a burden or standard of proof that MCCCD must meet in order to support the discipline of a Board-approved employee. In order to sustain the discipline of a Board-approved employee, all of the following criteria must be met:

   a. The employee knew or reasonably should have known that the employee's conduct could lead to disciplinary action;

   b. The disciplinary action is the result of job performance, violation of law, violation of established MCCCD policy or procedure, and/or a violation of established college/division/department policy or procedure;

   c. Management conducted a fair and objective investigation in accordance with MCCCD policy and the law;

   d. The investigation produced sufficient evidence or proof to reasonably support the failure of performance or violation as alleged;

   e. The disciplinary action taken was consistent with disciplinary action for similar or comparable conduct or was otherwise reasonable under the circumstances.

6. <u>Progressive Corrective Action Schedules.</u>

### GROUP ONE OFFENSES

| FIRST OFFENSE | Disciplinary action, including dismissal from employment |
|---|---|

### GROUP TWO OFFENSES

| FIRST OFFENSE | Initial Corrective Action |
|---|---|
| SECOND OFFENSE | Second Corrective Action |
| THIRD OFFENSE | Disciplinary action including dismissal from employment |

7. <u>Progressive Corrective Action Procedure.</u>

   a. Corrective Action Ground Rules.

      i. All meetings held under this procedure shall be conducted at a prearranged time and place that affords a fair and reasonable opportunity for all persons entitled to be present to attend.

      ii. At the time the meeting date is established, the employee will be informed that this is a corrective action discussion as set forth in this policy manual. The supervisor will provide

the employee sufficient time to locate a representative to accompany the employee to this meeting. The representative must be a fellow MCCCD employee.

iii. The representative shall be permitted a brief time prior to the meeting to confer with the employee. During the meeting the representative shall be permitted to observe and take notes and be permitted a limited right to speak, to include repeating to the management representative points the employee has already made, explaining to the management representative the significance of points made by the employee, and occasionally conferring with the employee in a confidential manner. The representative has no right to bargain at the meeting, no right to make the employee's willingness to cooperate contingent on a guarantee of leniency, and no right to speak for the employee in response to questions. Reasonable breaks shall be provided.

iv. As the corrective action moves from one step to the next, the supervisor or the employee may not add new considerations to the original action.

v. Employees have the right to request representation pursuant to this procedure without prejudice and all employees who participate in this process shall not be subjected to corrective action, harassed, or otherwise unfairly dealt with as a result.

vi. Employees and their representatives will be allowed reasonable release time to meet with management.

b. Initial Corrective Action Discussion

i. The Initial Corrective Action discussion will occur within a reasonable time of when the supervisor becomes aware of the unsatisfactory job performance/conduct.

ii. All parties will be notified of who will be attending the meeting.

iii. At this meeting the supervisor will provide the employee, in writing, with a draft Notice of Corrective Action (on the MCCCD form specifying the unsatisfactory job performance/conduct, the required job performance/conduct, and the consequences of failing to meet the required performance/conduct. The employee and supervisor will discuss a plan of action with specific goals designed to produce the desired performance/conduct. After the meeting the supervisor will complete the document and provide the employee with the opportunity to sign the document and with a copy. This will not be placed in the employee's official personnel file at the DO.

c. Second Corrective Action Discussion

i. If, after the Initial Corrective Action discussion, the employee fails to improve his/her job performance/conduct (in a reasonable amount of time) as stated in the Initial Corrective Action plan, the immediate supervisor will again schedule a private meeting with the employee regarding his/her lack of improvement. All parties will be notified of who will be attending the meeting.

ii. The emphasis of this meeting will continue to be corrective in intent. The supervisor will discuss job performance/conduct not yet being met from the Initial Corrective Action Plan

iii. The supervisor will present the employee with a draft Notice of (Second) Corrective Action (on the MCCCD form) specifying the unsatisfactory job performance/conduct, the

required job performance/conduct, and the consequences of failing to meet the required performance/conduct. The employee and supervisor will discuss a plan of action with specific goals designed to produce the desired performance/conduct. After the meeting the supervisor will complete the document and provide the employee with the opportunity to sign the document and with a copy.

iv. At the employee's request, upon proof of satisfactory performance after a reasonable amount of time, a letter of resolution will be placed in the employee's official personnel file at the DO. A copy will be retained by the supervisor and the employee.

d. Multiple Policy Infractions.

   i. Multiple policy infractions should be dealt with by following the progressive corrective action procedure set forth below:

      a) Multiple offenses which are unrelated are progressively corrected in the group in which the offense is classified;

      b) Multiple offenses which are related are progressively corrected regardless of the group in which the offense is classified and regardless of the order in which the offenses occurred; and

      c) Multiple offenses which are closely related in time, even if unrelated or in different groups hereunder, may be combined to result in corrective action which is more or less than the severity of the total sum of the separate offenses.

   ii. Examples of progressive corrective action and the difference between the treatment of related and unrelated offenses as shown in the table in Policy A-4 are as follows:

      a) If, as a first offense, an employee commits Group Two, Conduct Offense A (5), " Failure of an employee who is authorized to drive MCCCD vehicles to report to the employee's immediate supervisor a moving traffic violation occurring in the employee's private vehicle during non-work time," the employee would normally receive an Initial Corrective Action (ICA). If within 12 months the employee commits an unrelated Group Two offense (not a Conduct Offense, but a Performance or Attendance offense), the employee would normally receive an ICA. If, however, the second Group Two offense was related to the first offense, for example, Conduct Offense A (2), "Unknowing violation of MCCCD's Hiring of Relatives policy or Administrative Regulation 4.18 - Consensual Relationships policy," the employee would receive a Second Corrective Action (SCA).

| Type | Group 1 | Group 2 |
|------|---------|---------|
| Conduct | | 1-ICA; 2-SCA |
| Performance | | 2-ICA |
| Attendance | | |

      b) If, as a first offense, an employee commits Group One, Conduct Offense A (3), " Willful and intentional commitment of acts of fraud, theft, embezzlement, misappropriation, falsification of records or misuse of MCCCD funds, goods,

property, services, technology or other resources," the employee would normally be disciplined up to termination of employment. If the employee is not terminated but instead suspended without pay (SWOP) and if, within 36 months, the employee commits an unrelated Group Two offense, for example, Performance Offense B (1), "Neglect of duty. . .," the employee would receive an ICA. If, however, the second offense was related to the first offense, such as Group Two, Conduct Offense A (5), " Failure of an employee who is authorized to drive MCCCD vehicles to report to the employee's immediate supervisor a moving traffic violation occurring in the employee's private vehicle during non-work time," the employee would receive an SCA.

| Type | Group 1 | Group 2 |
|------|---------|---------|
| Conduct | 1-SWOP | 2-SCA |
| Performance |  | 2-ICA |
| Attendance |  |  |

# EXHIBIT C

**policy type**
## chancellor limitations

**policy title**      **2.0 general chancellor constraint**

The Chancellor shall not cause or allow any practice, activity, decision, or organizational circumstances that are unlawful, imprudent, or in violation of commonly-accepted higher education, business, and professional ethics and practices.

**monitoring method and frequency**

**Method: Internal**
**Frequency: Annually**

AMENDED February 22, 2011, Motion No. 9781, 9782

MCCCD-O 2153     B-1

# EXHIBIT D

# non discrimination
## section V

AR    5.1.1 maricopa county community college district (maricopa) eeo policy

It is the policy of the Maricopa District (consisting of Chandler-Gilbert Community College, the District Office, Estrella Mountain Community College, GateWay Community College, Glendale Community College, Maricopa Corporate College, Maricopa Skill Center, Mesa Community College, Paradise Valley Community College, Phoenix College, Rio Salado Community College, Scottsdale Community College, South Mountain Community College,  and Southwest Skill Center) to:

1.  Recruit, hire, and promote in all job groups, and to ensure that all Human Resources (HR) employment selection and decision practices do not discriminate, nor tolerate discrimination in employment or education, against any applicant, employee or student on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, citizenship status (including document abuse), age, disability, veteran status or genetic information.

2.  All HR employment selection and decision practices pertaining to advertising, benefits, compensation, discipline (including probation, suspension, and/or involuntary termination for cause or layoff), employee facilities, performance evaluation, recruitment, social/ recreational programs, and training will continue to be administered without regard to race, color, religion, sex, sexual orientation, gender identity, national origin, citizenship status (including document abuse), age, disability, veteran status or genetic information.

3.  Hold each level of management responsible for ensuring that all employment policies, procedures, and activities are in full compliance with all applicable federal, state, and local EEO statutes, rules, and regulations.

administrative regulation
## non discrimination
### section V

AR                5.1.2 maricopa eeo policy

Maricopa's Equal Employment Opportunity (EEO) Policy Statement or EEO Clause appears in all major publications distributed to employees, students, and applicants. Copies of these documents are available at each of the colleges, at the District Employee Services Office, and at the EEO/Affirmative Action (AA) Office, as well as the web site: http://www.maricopa.edu/eeo/.

administrative regulation

# non discrimination
## section V

AR        5.13 eeo policy statement

It is the policy of Maricopa to promote equal employment opportunities through a positive continuing program. This means that Maricopa will not discriminate, nor tolerate discrimination in employment or education, against any applicant, employee or student because of race, color, religion, sex, sexual orientation, gender identity, national origin, citizenship status (including document abuse), age, disability, veteran status or genetic information. Additionally, it is the policy of Maricopa to provide an environment for each Maricopa job applicant and employee that is free from sexual harassment, as well as harassment and intimidation on account of an individual's race, color, religion, sex, sexual orientation, gender identity, national origin, citizenship status (including document abuse), age, disability, veteran status or genetic information.

In addition, lack of English language skills is not a barrier to admission into Career and Technical Education (CTE) programs or skill centers. Students who enroll will be supported in the development of these skills by classes in English as a Second Language and other resources. Translation services and bilingual instruction can also be provided: contact College Designee for more information.

AMENDED thorough direct approval from the Chancellor after review by Legal Counsel, May 20, 2014

MCCCD-O 2149

**administrative regulation**
## non discrimination
### section V

AR                    5.1.4 eeo clause

The Maricopa County Community College District is an EEO/AA institution.
As required by federal regulations, the EEO Policy Statement or EEO Clause MUST appear in all

*Maricopa Governance*

administrative regulation

## non discrimination
## section V

AR      5.1.5 use of the eeo policy statement or eeo clause

major publications distributed to employees, students, and applicants throughout Maricopa's system. These publications include, but are not limited to, catalogs, handbooks, schedules, policy manuals, recruitment publications, advertisements (internal and external), and application forms (employee and student).

Additionally, the EEO Policy Statement or EEO Clause MUST be included in all purchase orders and contracts.

The Policy Statements Declaration, which is an exhibit to this regulation, is a one-page

Maricopa Community College District Mail - Fwd: Schaun Owens


**MARICOPA**
**COMMUNITY**
**COLLEGES®**

**Maria Bellino <mar2390580@domail.maricopa.edu>**

---

## Fwd: Schaun Owens

---

**John Naughton <naughton@gatewaycc.edu>**                         Thu, Jan 30, 2014 at 8:26 AM
Reply-To: naughton@gatewaycc.edu
To: Judy Castellanos <judy.castellanos@domail.maricopa.edu>
Cc: Maria Bellino <maria.bellino@domail.maricopa.edu>, Alice Cornelius <cornelius@gatewaycc.edu>

Good morning Judy,

Please provide a letter of non-retention if Mr. Bowers supports this action.

John

---------- Forwarded message ----------
From: Steven Gonzales <steven.gonzales@gatewaycc.edu>
Date: Thu, Jan 30, 2014 at 8:14 AM
Subject: Re: Schaun Owens
To: Tony Astl <anthony.astl@gatewaycc.edu>
Cc: Jim Bowers <james.bowers@domail.maricopa.edu>, John Naughton <naughton@gatewaycc.edu>

Based on the information provided, I support the decision to non-renew the employee.

Steven

On Wed, Jan 29, 2014 at 5:47 PM, Tony Astl <anthony.astl@gatewaycc.edu> wrote:
Steven, I support Kristina's request of non retention of Shcaun Owens based on the following
actions dating back to her hire date of 8/13:

- Giving permission to West-Mec students to leave campus
- Not adhering to the curriculum
- Excessive tardiness
- Not adhering to State Board regulations (Sanitation)
- Playing videos for students and giving hours for this time (falsifying hours)
- Incident reports (attached)

If you support the non retention, please state such and forward to Jim Bowers and copy
John Naughton.

Tony

Tony Astl
Interim Vice President of Administrative Services
GateWay Community College

---------- Forwarded message ----------
From: John Naughton <naughton@gatewaycc.edu>
Date: Wed, Jan 29, 2014 at 1:24 PM
Subject: Fwd: Schaun Owens

MCCCD-0-122

To: Tony Asti <anthony.asti@gatewaycc.edu>

Tony,

Do you support this action?

John

---------- Forwarded message ----------
From: **Christopher Wurster** <wurster@gatewaycc.edu>
Date: Tue, Jan 28, 2014 at 12:34 PM
Subject: Fwd: Schaun Owens
To: Tony Asti <anthony.asti@gatewaycc.edu>
Cc: John Naughton <naughton@gatewaycc.edu>

Hi Tony, I support Kristina Scott and Lisa Hemming's request for non-retention of this employee.  Please let me know if you approve.

Thanks,

CJ

**CJ Wurster**
Director (Interim)
wurster@gatewaycc.edu

p: (602) 238-4330
1245 East Buckeye Road
Phoenix, Arizona 85034

*A Division of GateWay Community College*

---------- Forwarded message ----------
From: **Kristina Scott** <scottk@gatewaycc.edu>
Date: Tue, Jan 28, 2014 at 9:42 AM
Subject: Re: Schaun Owens
To: Christopher Wurster <wurster@gatewaycc.edu>

CJ,

Due to the information that has been provided, I am in agreement with the recommendation.

Kristina

On Tue, Jan 28, 2014 at 8:19 AM, Christopher Wurster <wurster@gatewaycc.edu> wrote:
> Kristina, do you agree with this recommendation?

MCCCD-0-123

10/13/2015                          Maricopa Community College District Mail - Fwd: Schaun Owens



**CJ Wurster**
Director (Interim)
wurster@gatewaycc.edu

p: (602) 238-4330
1245 East Buckeye Road
Phoenix, Arizona 85034

*A Division of GateWay Community College*



---------- Forwarded message ----------
From: **Lisa Hemming** <hemming@gatewaycc.edu>
Date: Mon, Jan 27, 2014 at 10:49 AM
Subject: Fwd: Schaun Owens
To: Christopher Wurster <wurster@gatewaycc.edu>, Karen Scott <scottk@gatewaycc.edu>

Good morning,

I am sending this email in request for termination of Schaun Owens.
Please let me know if you have any questions.

Thanks,
Lisa



**Lisa Hemming**
Assistant Program Manager of Cosmetology and Aesthetics

Northwest Skill Center
hemming@gatewaycc.edu

p: (602) 392-5236;C;

1245 East Buckeye Road, Phoenix, Arizona 85034

*A Division of GateWay Community College*



---------- Forwarded message ----------
From: Lisa Hemming <hemming@gatewaycc.edu>
Date: Mon, Jan 13, 2014 at 4:54 PM
Subject: Fwd: Schaun Owens
To: Karen Scott <scottk@gatewaycc.edu>
Cc: Christopher Wurster <wurster@gatewaycc.edu>

HI, Kristina and CJ,

Please see the attached documentation regarding Schaun Owens. Let me know if you need

MCCCD-0-124

any other information from me.

Thank you,

Lisa



**Lisa Hemming**
Assistant Program Manager/Cosmetology
Northwest Skill Center
hemming@gatewaycc.edu

p: (602) 392-5236|C£

1245 East Buckeye Road, Phoenix, Arizona 85034

*A Division of GateWay Community College*



---------- Forwarded message ----------
From: **Kristina Scott** <scottk@gatewaycc.edu>
Date: Fri, Jan 10, 2014 at 4:57 PM
Subject: Re: Schaun Owens
To: Lisa Hemming <hemming@gatewaycc.edu>

Hi Lisa,

I spoke with CJ about the situation and we agree that action should be taken. In order for this to move forward, for each of the bulleted items listed below, please explain what happened by identifying the following:

- The date the incident(s) occurred
- What happened (brief summary, 1-2 sentences, that includes facts)
- Why it should not have occurred (per policy, etc.)
- What you did to correct it

Your essential supporting documentation can be scanned in corresponding order to your bullet list and attached to the email. I know you are very detailed and thorough, however, try to limit the information to what is most relevant (i.e. incident reports). All other supporting documentation can be available upon request.

I would suggest keeping your email as is and attaching two documents: 1. explains what happened, 2. essential supporting documentation.

Let me know if you have any questions.

Kristina

On Fri, Jan 10, 2014 at 3:16 PM, Lisa Hemming <hemming@gatewaycc.edu> wrote:
Hi Kristina,

Here a some of the current challenges I am having with Schaun Owens dating back to her hire date of 8/13.

MCCCD-0-125

- Giving permission to West-Mec students to leave campus
- Not adhering to the curriculum
- Excessive tardiness
- Not adhering to State Board regulations (Sanitation)
- Playing videos for students and giving hours for this time (falsifying hours)
- Incident reports

Please note that I have several items of documentation to support this list. I am attaching her incident report dated 10/2/13. I will be working on her incident report for her most recent issue of not adhering to the curriculum.
Please let me know if you have any questions.

Thanks,
Lisa



**Lisa Hemming**

Assistant Program Manager/Cosmetology
Northwest Skill Center
hemming@gatewaycc.edu

 p: (602) 392-5236 Ce

1245 East Buckeye Road, Phoenix, Arizona 85034

*A Division of GateWay Community College*



**Kristina Scott**
Assistant Director, Northwest Campus
scottk@gatewaycc.edu

p: (602) 238-4368  |  f: (602) 218-4528
1245 East Buckeye Road, Phoenix, Arizona 85034

*A Division of GateWay Community College*



MCCCD-0-126



**Kristina Scott**
Assistant Director, Northwest Campus
scottk@gatewaycc.edu

p: (602) 238-4368  |  f: (602) 218-4528
1245 East Buckeye Road, Phoenix, Arizona 85034

*A Division of GateWay Community College*





**John J. Naughton**
Assistant Director Administrative and Support Services
GWC/MSC Human Resources
GateWay Community College
108 N. 40th Street Office # MA 1143
Phoenix, AZ 85034
p: (602) 238-4309  |  f: (602) 238-4307
Naughton@gatewaycc.edu



--
**Steven R. Gonzales, Ed. D.**
President
Administration Office
steven.gonzales@gatewaycc.edu

p: (602) 286-8008  |  f: (602) 286-8003
108 North 40th Street, Phoenix, Arizona 85034





*A Maricopa Community College*

MCCCD-0-127



**John J. Naughton**
Assistant Director Administrative and Support Services
GWC/MSC Human Resources
GateWay Community College
108 N. 40th Street Office # MA 1143
Phoenix, AZ 85034
p: (602) 238-4309  |  f: (602) 238-4307
Naughton@gatewaycc.edu



MCCCD-0-128

EXHIBIT F

 **MARICOPA
COMMUNITY
COLLEGES®**

Maria Bellino <mar2390580@domail.maricopa.edu>

---

## Fwd: Schaun Owens

---

**John Naughton** <naughton@gatewaycc.edu>                                Thu, Jan 30, 2014 at 11:08 AM
Reply-To: naughton@gatewaycc.edu
To: Maria Bellino <maria.bellino@domail.maricopa.edu>

Maria,

Please see attached.
[Quoted text hidden]



**3 attachments**

📊 **Schaun Owens-Documentation.xlsx**
12K

📄 **Incident Report Schaun Owens 10-2-13.pdf**
206K

📄 **Owens-Incident Reports.pdf**
316K

MCCCD-0-107

| Incident: | Date(s): | Description: | Impact: | Action: |
|---|---|---|---|---|
| Students leaving campus | 9/16/13 and 12/20/2013 | 9/16/13 Ms Owens gave Kailyn Culp permission to smoke outside. 12/20/13 Ms Owens Gave Isabel Flores and Jessica Diaz permisson to go to Fry's. | Closed campus. Violation of handbook. | verbal warning with intent of follow up with write up. |
| Not adhering to curriculum | 9/5/2013, 12/6/13 and 1/6/14 | 9/5/13 did not admister State Board bootcamp or test as instructed-I had to redo curriculum for the week. 12/6/13 Did not teach students facials as listed on curriculum for 4 days. 1/6/14 did not administer test as instructed. I had to redo curriculum for the week. | Students grades are not entered on time. Students lack of learning. Teacher coverage for ADA. | Verbal warning and write up. |
| Excessive Tardies | Total tardies per month: Aug -2 Sept -1 Oct -1 Dec-4 Jan -5 | Ms Owens sometimes will text me if she is going to be late. Time is not always entered. On 12/24 she was LWP. She has taken off 1/13/14 with out approval as her time is "frozen" per Alice Cornelius. | Misuse of company time. | Verbal warning and write up. |
| Not adhering to State Board Regulations on Sanitation. | 11/5/13 12/13/13 12/19/13 1/11/14 | I did a State Board Inspection on 11/5/13. There was food and drink in stations. Stations were dirty with dirty implements, dirty towels and personal items. 12/13/13 dispesary was full of dirty towels. Break room was dirty and not cleaned from prior day. Monitors are not being checked by Ms Owens. 12/19/13 Students eating on the clinic floor. 1/11/14 towel bins overflowing with dirty towels. Food and drink in classrooms and pizza boxes left in classroom. Garbages overflowing in breakroom and clinic. These duties are all assigned to Ms Owens class. | This is violation of State Board Laws and Rules. We could suffer a heft fine if we are in violation and possibly shut down. | Reviewed at every meeting. Laws and Rules were printed out so all teachers were reminded of our responsibilities as licensed instructors. Verbal warning and write up. |

| | | | | |
|---|---|---|---|---|
| Playing movies and videos for students during classtime. | 9/13/2013 12/10/13 12/20/13 | 9/13/13 Sierra Dunaway told Paul McCray and I that Ms. Owens plays Videos (Tabatha's take over and Faceoff) during class time instead of State Board boot camp. 12/10/13 Belen Guarista told Paul McCray, Cheri Snow, Belen's parents and myself that Ms. Owens continues to play videos during classtime. 12/20/13 Ms Owens played the movie "Jingle All the Way" for students during classtime. | This is falsifying hours and is not permitted by State Board. | This has been addressed many time with staff. This is not permitted in our school or by State Board. Verbal warning with intent to follow up. |
| Multiple Incident reports | 10/2/2013 1/13/14 | I wrote Schaun up for sleeping in the office on 10/2/13. I have written up Schaun today for violation of sanitation, tardiness and students in teachers office for 1/10/14 and 1/11/14 | Verbal discussions do not seem to correct the behavior. | I will write up any teacher if I have given a verbal warning and the behavior has not been corrected. |

I have a file of documentation in the forms of emails, word documents and text messages that will support this information and I am willing to provide if requested.





MARICOPA SKILL CENTER

## INCIDENT REPORT GUIDELINES

- The Incident Report Form can be used as a tool for a supervisor to document inappropriate behavior and/or performance.

- The form is not a disciplinary tool and will not take the place of progressive discipline as outlined in the employee policy manuals.

- May be used to begin the disciplinary process.

- Will be retained by the supervisor in his/her records.

## DEFINITIONS ON SOME INAPPROPRIATE BEHAVIORS:

- **Failure to perform completely.** Incompetent performance results if a supervisor communicates reasonable performance standards to an employee and after a specific period of time the employee does not improve.

- **Willful misconduct including violation of Governing Board policies, District administrative regulations or laws that affect the ability to perform a job.** Willful misconduct is not limited to violations of written or stated Governing Board policies or administrative regulations. It also includes violations of generally accepted standards. For example, the District may terminate an employee for theft of property without promulgating a rule prohibiting theft.

- **Insubordination (willful failure to perform job duties).** Insubordination results if a supervisor communicates reasonable duties to an employee and the employee willfully fails to perform.

- **Threatening or committing acts of intimidation or violence.** Violence, threats, harassment, intimidation, and other disruptive behavior in MCCCD facilities will not be tolerated. Such behavior includes, but is not limited to, oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.

- **Inappropriate Conduct.** Examples of inappropriate conduct include, but are not limited to:

    - Job abandonment;
    - Discourtesy toward co-workers or the public
    - Sleeping on the job.
    - Chronic or repeated absenteeism or absence without a legitimate excuse and/or failure to follow proper notification procedures.



**Incident Report**



Employee Name: <u>Schaun Owens</u>

Date: <u>October 1, 2013</u>

Location/Department/Position: <u>NWSC/Cosmetology/Associate Instructor</u>

<u>Description of incident: (Date, Time, Place, People Involved)</u>
   On October 1, 2013 at approximately 10:45am I walked into the teacher's office and noticed Schaun Owens sitting unusual in her chair at her desk, I asked if she was okay which she said yes, the second time I asked her, I asked again if she was sure she was okay, and she said yes. She then told me she was sitting at the desk looking at the computer when she realized how tired she was, so she just closed her eyes for a second.
   I have 3 witness that came forward to me stating Schaun was asleep at her desk for anywhere from 10-20 minutes.

<u>Performance Impact:</u>
Sleeping on the job is inappropriate conduct.

<u>Recommendations on performance/behavior:</u>

The Instructor will follow all policies and procedure outlined in the MCCCD and MSC Northwest manuals.

<u>Employee response (optional):</u>

No signing because I don't agree with accusation. I was not sleeping on the job.

<u>Additional comments (optional):</u>

Did not sign- see above

_Supervisor Signature_

_10/2/13_
Date

Employee Signature (optional)

Date

Updated 5/2/2012

MCCCD-0-112

 **MARICOPA COMMUNITY COLLEGES®**

Lisa Hemming< lis2086488@gatewaycc.edu>

## Ms. Ownes
1 message

Carolyn Main< main@gatewaycc.edu>                          Tue, Oct 1, 2013 at 11:48 AM
Reply-To: main@gatewaycc.edu
To: Lisa Hemming <hemming@gatewaycc.edu>

Lisa,

Just wanted to let you know, I'm not sure if Ms. Owens is ok or not. She was sleeping in the office for from what I saw at least 10 minutes.
*Carolyn Cardwell*
Associate Instructor
Northwest Skill Center
Cosmetology
main@gatewaycc.edu
Phone: (602)-392-5000

MCCCD-0-113

Maricopa Community College District Mail - 10/1/13

Page 1 of 1

 **MARICOPA
COMMUNITY
COLLEGES®**

Lisa Hemming< lis2066488@gatewaycc.edu>

## 10/1/13
1 message

**Shala Dvelrln**< shala.dvelrln@gatewaycc.edu>
To: Lisa Hemming <hemming@gatewaycc.edu>

Tue, Oct 1, 2013 at 5:01 PM

On 10/1/13 I entered the office and noticed ms. Shaun asleep in her chair. I was at my desk for approximately 5 minuets and she was asleep. I left the office and reentered with Lisa Hemming, who asked her if she was O.K.? she said yes she was looking at the computer and her eyes were tired so she decided to rest her eyes.

Shala Dvelrln

MCCCD-0-114

 **MARICOPA COMMUNITY COLLEGES®**

Lisa Hemming< lis2066488@gatewayoc.edu>

## Today
1 message

Robert Wood < robert.wood@gatewayco.edu>                    Tue, Oct 1, 2013 at 9:47 PM
Reply-To: robert.wood@gatewayco.edu
To: Lisa Hemming <hemming@gatewayco.edu>

I went on break at 10:00, as I walked into the office I noticed that MS.Owens was curled up in her chair and it appeared she was asleep. I thought to myself that doesn't look comfortable.

Truly I don't know if it was before break or after, either way I did notice Ms. Owens looking quite relaxed. I know how hard it is to sit at the computer and become relaxed and want to nap and chill. I have to get up and change what I am doing to get focused again, plus a cup of coffee helps somewhat.  Mr Wood

MCCCD-0-115



**INCIDENT REPORT GUIDELINES**



- The Incident Report Form can be used as a tool for a supervisor to document inappropriate behavior and/or performance.

- The form is not a disciplinary tool and will not take the place of progressive discipline as outlined in the employee policy manuals.

- May be used to begin the disciplinary process.

- Will be retained by the supervisor in his/her records.

## DEFINITIONS ON SOME INAPPROPRIATE BEHAVIORS:

- **Failure to perform completely.** Incompetent performance results if a supervisor communicates reasonable performance standards to an employee and after a specific period of time the employee does not improve.

- **Willful misconduct including violation of Governing Board policies, District administrative regulations or laws that affect the ability to perform a job.** Willful misconduct is not limited to violations of written or stated Governing Board policies or administrative regulations. It also includes violations of generally accepted standards. For example, the District may terminate an employee for theft of property without promulgating a rule prohibiting theft.

- **Insubordination (willful failure to perform job duties).** Insubordination results if a supervisor communicates reasonable duties to an employee and the employee willfully fails to perform.

- **Threatening or committing acts of intimidation or violence.** Violence, threats, harassment, intimidation, and other disruptive behavior in MCCCD facilities will not be tolerated. Such behavior includes, but is not limited to, oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.

- **Inappropriate Conduct.** Examples of inappropriate conduct include, but are not limited to:

  - Job abandonment;
  - Discourtesy toward co-workers or the public
  - Sleeping on the job.
  - Chronic or repeated absenteeism or absence without a legitimate excuse and/or failure to follow proper notification procedures.

MCCCD-0-116



**Incident Report**



Employee Name: Schaun Owens

Date: Jan. 11, 2014

Location/Department/Position: NWSC/Cosmetology/Associate Instructor

Description of incident: (Date, Time, Place, People Involved)

Jan. 11, 2014 at 1:35pm in Classroom #130 Ms. Owen's classroom.
There was a pizza party with Ms. Owens' class in the classroom during instructional hours as evidenced
by leftover pizza boxes and empty drink containers in the classroom and an email from staff members.

Performance Impact:

This is in violation of NSWC policy and State Board regulations.

Recommendations on performance/behavior:

All NWSC and State Board policies, rules and regulations must be adhered to, without exception.

Supervisor Signature                    Employee Signature (optional)

Date: 1/13/14                           Date

Updated 5/2/2012

MCCCD-0-117





### INCIDENT REPORT GUIDELINES

- The Incident Report Form can be used as a tool for a supervisor to document inappropriate behavior and/or performance.

- The form is not a disciplinary tool and will not take the place of progressive discipline as outlined in the employee policy manuals.

- May be used to begin the disciplinary process.

- Will be retained by the supervisor in his/her records.

### DEFINITIONS ON SOME INAPPROPRIATE BEHAVIORS:

- **Failure to perform completely.** Incompetent performance results if a supervisor communicates reasonable performance standards to an employee and after a specific period of time the employee does not improve.

- **Willful misconduct including violation of Governing Board policies, District administrative regulations or laws that affect the ability to perform a job.** Willful misconduct is not limited to violations of written or stated Governing Board policies or administrative regulations. It also includes violations of generally accepted standards. For example, the District may terminate an employee for theft of property without promulgating a rule prohibiting theft.

- **Insubordination (willful failure to perform job duties).** Insubordination results if a supervisor communicates reasonable duties to an employee and the employee willfully fails to perform.

- **Threatening or committing acts of intimidation or violence.** Violence, threats, harassment, intimidation, and other disruptive behavior in MCCCD facilities will not be tolerated. Such behavior includes, but is not limited to, oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.

- **Inappropriate Conduct.** Examples of inappropriate conduct include, but are not limited to:

  - Job abandonment;
  - Discourtesy toward co-workers or the public
  - Sleeping on the job.
  - Chronic or repeated absenteeism or absence without a legitimate excuse and/or failure to follow proper notification procedures.

MCCCD-0-118



**Incident Report**



Employee Name: Schaun Owens

Date: Jan 10th 2014

Location/Department/Position: NWSC/Cosmetology/Associate Instructor

**Description of Incident: (Date, Time, Place, People Involved)**

Jan. 10th 2014 in the teacher's office at 6pm, Ms. Owens, Karen Esparza, Jessica Díaz, Belen Guarista, Jennifer Jimenez and Ana Ramos,

Ms. Owens had students in the teacher's office.

**Performance impact:**

Students are not allowed into the office. This has been discussed many times and there is a sign on the door starting students are not allowed in the office. Teachers have their personal belongings in this office. This is a private area.

**Recommendations on performance/behavior:**

No student will be permitted into the teacher's office for any reason. If such meetings with students are needed, there are alternative locations including the instructor's classroom and meeting rooms.

Supervisor Signature                                Employee Signature (optional)

Date   7/13/14                                      Date

Updated 5/2/2012



**INCIDENT REPORT GUIDELINES**



MARICOPA SKILL CENTER

- The Incident Report Form can be used as a tool for a supervisor to document inappropriate behavior and/or performance.

- The form is not a disciplinary tool and will not take the place of progressive discipline as outlined in the employee policy manuals.

- May be used to begin the disciplinary process.

- Will be retained by the supervisor in his/her records.

## DEFINITIONS ON SOME INAPPROPRIATE BEHAVIORS:

- **Failure to perform completely.** Incompetent performance results if a supervisor communicates reasonable performance standards to an employee and after a specific period of time the employee does not improve.

- **Willful misconduct including violation of Governing Board policies, District administrative regulations or laws that affect the ability to perform a job.** Willful misconduct is not limited to violations of written or stated Governing Board policies or administrative regulations. It also includes violations of generally accepted standards. For example, the District may terminate an employee for theft of property without promulgating a rule prohibiting theft.

- **Insubordination (willful failure to perform job duties).** Insubordination results if a supervisor communicates reasonable duties to an employee and the employee willfully fails to perform.

- **Threatening or committing acts of intimidation or violence.** Violence, threats, harassment, intimidation, and other disruptive behavior in MCCCD facilities will not be tolerated. Such behavior includes, but is not limited to, oral or written statements, gestures, or expressions that communicate a direct or indirect threat of physical harm.

- **Inappropriate Conduct.** Examples of inappropriate conduct include, but are not limited to:

    - Job abandonment;
    - Discourtesy toward co-workers or the public
    - Sleeping on the job.
    - Chronic or repeated absenteeism or absence without a legitimate excuse and/or failure to follow proper notification procedures.



**Incident Report**



MARICOPA SKILL CENTER

Employee Name: Schaun Owens

Date: Jan. 2, 2014 through Jan. 11, 2014

Location/Department/Position: NWSC/Cosmetology/Associate Instructor

**Description of Incident: (Date, Time, Place, People Involved)**

Excessive tardiness:
Jan 2nd 2014-tardy-10 min
Jan 3rd 2014-tardy-7 min
Jan 8th 2014-tardy-1 hour and 15 min
Jan 9th 2014- tardy- 5 min
Jan 11th 2014-tardy-10 min

**Performance Impact:**

This is in violation of MSC policy. All employees are expected to arrive on time and prepared to work at designated start time.

**Recommendations on performance/behavior:**

All MSC policies, rules and regulations must be adhered to, without exception. Employee must report on time to work.

Supervisor Signature

Employee Signature (optional)

1/13/14

Date

Date

Updated 5/2/2012

MCCCD-0-121