# UDALL|SHUMWAY
### COUNSELORS AT LAW SINCE 1965

1138 NORTH ALMA SCHOOL ROAD, SUITE 101
MESA, ARIZONA 85201
Telephone: 480.461.5300 | Fax:  480.833.9392

David R. Schwartz - #009264
das@udallshumway.com
Kimberly R. Davis - # 030210
krd@udallshumway.com
Attorney for Defendants Maricopa County Community
College District, Maricopa Skill Center and Lisa Hemming

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Schaun Owens, | NO.  CV-15-01769-PHX-SPL |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Maricopa County Community College District, Maricopa Skill Center, and Lisa Hemming, | |
| Defendants. | |

Defendants Maricopa County Community College District ("District") and Lisa

Hemming ("Hemming") hereby submit this reply in support of Defendants' Motion for

Summary Judgment (Dkt #50) on all claims.  Plaintiff in her Response (Dkt #53) does not

dispute that there is no evidence to support her claim of racial discrimination under 42

U.S.C. §§ 1981, 1983 against either Defendant.  Plaintiff's Response only argues that there

is a genuine issue of material fact regarding her First Amendment retaliation claim based

upon her opposition to an alleged directive from her supervisor (Defendant Lisa Hemming)

that she tell her students they could not speak Spanish in the student lounge.  Plaintiff did not dispute the facts set forth in the Separate Statement of Facts in Support of Defendants' Motion for Summary Judgment ("DSOF") (Dkt #51) or submit additional facts as outlined in this Court's Order and in the Local Rules.  (Dkt #52)  Plaintiff's Response does not cite to any evidence in the record to support her bald conclusions.  (Dkt #52)  The evidence here simply does not support Plaintiff's First Amendment claim, so summary judgment should be granted on all claims as to the District and/or Lisa Hemming.

**A. The District Is Not Liable For Alleged First Amendment Retaliation As No Monell Liability Was Demonstrated**

Plaintiff has produced no evidence of a policy or widespread practice of retaliation for the exercise of an employee's First Amendment rights, but instead asserts that she was singled out.  (DSOF ¶ 146)  Plaintiff only points to herself which is insufficient to support a constitutional violation under *Monell*.  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  There is no evidence to show that a final policymaker was aware of any alleged First Amendment protected activity and/or committed an act of retaliation for such protected activity.  (DSOF ¶ 182, 187-189, 191)

There is also no evidence to support ratification as there was no knowledge of any impermissible reason for Plaintiff's proposed termination.  (DSOF ¶ 182, 187-189, 191)  The mere failure to overrule a subordinate's action without more is insufficient to support a claim.  The facts in this case are unlike those in the cases cited in Plaintiff's Response.  Plaintiff cites to no evidence that any approval of the termination was reflexively approved with awareness of the alleged retaliatory motive behind it.  The District's Human Resources

personnel reviewed the proposed termination and recommended that it proceed.  (DSOF ¶ 183-184)  Vice Chancellor Bowers had no reason to believe race or protected activity played any role in the proposed termination.  (Dkt 51-11, p. 4-5, 8-11, ex. 10, Bowers affidavit ¶ 12-17 and ex. A)  The District should be dismissed from the § 1983 claim based upon alleged First Amendment retaliation.

**B. Defendant Hemming Did Not Engage In First Amendment Retaliation**

The parties agree on the five step sequential inquiry in a First Amendment retaliation claim.[1]  Plaintiff does not dispute that her only arguably protected activity would be her statements she made to her supervisor, Defendant Hemming, and Kristina Scott, Hemming's supervisor, challenging the directive that Plaintiff's students could not speak Spanish in the student lounge.  (Dkt #53) (DSOF ¶ 148, 151, 158, 160-161)[2]  Plaintiff's claim regarding this matter fails due to her speech was that of a public employee and there was no casual nexus to support that her opposition was a factor in her termination.  In any event, the evidence conclusively shows that Plaintiff would have been terminated even in the absence of any protected activity.

_____

[1] Plaintiff's Response implies that Hemming was sued in her official capacity.  If true, then she should be dismissed as a plaintiff cannot sue both the entity and an individual solely in their official capacity.  *Jarbo v. County of Orange*, 2010 WL 3584440, * 14 (C.D. Cal. 2010); *Luke v. Abbott*, 954 F.Supp. 202 (C.D.Cal.1997); *accord Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (affirming directed verdict in favor of officially named individual defendants because "to keep both the City and the officers sued in their official capacity as defendants in this case would have been redundant and possibly confusing to the jury"); *Rosa R. v. Connelly*, 889 F.2d 435, 437 (2nd Cir.1989) (holding that "the district court properly dismissed [a school superintendent] as a defendant" because he was sued in "his official rather than personal capacity" and the school board "was the real party in interest").  The analysis assumes Hemming was sued in her individual capacity.  *See Soffer v. City of Costa Mesa*, 798 F.2d 361, 363 (9th Cir. 1986).

[2] Defendant Hemming had already recommended and provided substantiation of problems with Plaintiff by January 13, 2014 before the January 17, 2014 meeting between Plaintiff, Hemming and Scott.   (DSOF ¶ 162, 178-180)

### 1. Plaintiff's Speech Was As A Public Employee So It Was Not Protected

Defendants accepted for purposes of its motion that Plaintiff's speech (as alleged although disputed) to Defendant Hemming and Kristina Scott could qualify as speech on matters of public concern.  (DSOF ¶ 148-151, 156, 160-161)  In determining whether speech is done as an employee, the inquiry is a practical one informed by the job description and actual duties performed.  *Oyarzo v. Tuolumne Fire District*, 955 F. Supp. 2d 1038, 1060 (D. Ariz. 2013).  Speech which owes its existence to a public employee's professional responsibilities is not protected, and a plaintiff has the burden of showing the speech was spoken in Plaintiff's capacity of a private citizen and not a public employee.  *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006); *Huppert v. City of Pittsburg*, 574 F.3d 696, 703 (9th Cir. 2009). "While 'the question of the scope and content of a plaintiff's job responsibilities is a question of fact,' the 'ultimate constitutional significance of the facts as found' is a question of law."  *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009).

Plaintiff's argument that she acted as a private citizen is similar to the one rejected in *Christensen v. Washington State Dept. of Corrections*, 2010 WL 1734841 (W.D. Wash. 2010), wherein summary judgment was granted for the defendant:

> Plaintiff cites *Eng v. Cooley* for the proposition that because Plaintiff was not paid to investigate or complain about inmate assaults, his speech was not a part of his official job duties and thus was not protected. Plaintiff overstates the law in that case. *Eng* did not say that all complaints are outside the realm of a public employee's job duties. In *Eng*, the questionable speech consisted of the plaintiff's attorney's communications with the press regarding retaliation against the plaintiff and the plaintiff's complaints about allegedly improper activity by his supervisor that was outside the scope of his supervisor's responsibilities. *Id*. at 1065–66. The Ninth Circuit concluded that the plaintiff's "version of the facts plausibly indicate[d] that he had no official duty to complain" about either of those events. *Eng*, at 1073.

> Here, while Plaintiff spoke as a private citizen when he participated in speech activities outside the workplace, he spoke as a public official when he alerted DOC officials of his concerns inside it. It is true that Plaintiff had no official duty to visit prosecutors offices and attend meetings and rallies in the community to raise awareness about DOC's failure to prosecute inmate assaults. *See Frietag v. Avers*, 468 F.3d 528, 545 (9th Cir. 2006) (noting that a female prison guard spoke as a citizen when she communicated with her state senator and an inspector general about the state's alleged failure to eliminate sexual harassment). However, Plaintiff has failed to present any facts plausibly indicating that his inter-office emails and memoranda were not the product of performing the tasks he was paid to perform.
>
> *    *    *
>
> Although there is no evidence indicating that Plaintiff was required to speak out about prosecution of inmate assaults, his speech in workplace memoranda and emails was made as a result of performing the tasks he was paid to perform

*Id*. at 7-8.  In *Jacobson v. Schwarzenegger*, 650 F. Supp. 2d 1032, 1059-60 (C.D. Cal. 2009), the court also granted summary judgment because restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen:

> The Ninth Circuit's discussion of *Freitag* in *Marable* is instructive. The Ninth Circuit explained that, in *Freitag*, the plaintiff correctional officer was required, as part of her official duties, to report inmate misconduct and to pursue appropriate discipline. Thus, her complaints to prison administrators that her supervisors were ignoring her reports of inmate sexual misconduct could be viewed as complaints that "her supervisors' actions were preventing her from effectively doing her job," and were directly related to her job duties. *Marable*, 511 F.3d at 932; *see Freitag*, 468 F.3d at 544–46. The plaintiff in *Marable*, on the other hand, was chief engineer of a ferry, and his job in no way included pointing out his superiors' corrupt overpayment schemes. *Marable*, 511 F.3d at 932. Here, as in *Freitag*, plaintiff's duties as appointed counsel required him to protect his clients' procedural and constitutional rights at their parole revocation hearings, and his complaints to senior Board officials that deputy commissioners presiding over their hearings were violating his clients' rights—or, put otherwise, were attempting to prevent him "from effectively doing [his] job"—were directly related to these duties. *See Marable*, 511 F.3d at 932; *Freitag*, 468 F.3d at 544–46.

*Id.* at 1058-59.[3]

Here Plaintiff as the teacher was paid to and required to tell her students what the rules were at the school and to consistently enforce those rules.  (DSOF ¶ 11, 30, 31, 57) Even though the precise scope of job duties may generally be a question of fact, summary judgment can be granted where no rational jury could find that the plaintiff's speech was not uttered within the scope of their job duties.  *E.g.*, *Christensen v. Washington State Dept. of Corrections*, 2010 WL 1734841, * 7-8 (W.D. Wash. 2010); *Jacobson v. Schwarzenegger*, 650 F. Supp. 2d 1032, 1060 (C.D. Cal. 2009).  Because Plaintiff's statements here were made within her chain of command and related to her job responsibilities of explaining and enforcing the rules applicable to the students, they were not protected by the First Amendment.

### 2. Plaintiff's Speech Was Not A Factor In Her Termination

Plaintiff's First Amendment claim based upon her speech against the Spanish prohibition in the student lounge also fails due to an absence of any causal nexus to any adverse employment action.  The causal link does require knowledge of the prior protected activity.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir. 2006); *Jacobson v. Schwarzenegger*, 650 F. Supp. 2d 1032, 1061-62 (C.D. Cal. 2009).  There is no evidence that administrative officials who approved Plaintiff's termination were aware of any protected activity.  (DSOF ¶ 180-184, 187-189, 191)

---

[3]  Plaintiff here was compensated for the time spent making her allegations as they occurred during school hours when she met with her boss Hemming and her indirect supervisor Scott.  (DSOF ¶ 148-152, 156-162) The Supreme Court in any event made clear that it is immaterial whether a plaintiff experienced some personal gratification from his speech if it was done as a public employee.  *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006); *Jacobson v. Schwarzenegger*, 650 F. Supp. 2d 1032, 1059 (C.D. Cal. 2009).

Assuming there is knowledge of the protected activity, temporal proximity can provide the basis as part of a prima facie case for showing that protected activity was the motivating basis for retaliation. However, in *Swan v. Bank of America*, 360 Fed. Appx. 903, 906 (9th Cir. 2009), the Ninth Circuit held a gap of four months was too remote in time to support a finding of causation based solely upon temporal proximity. Plaintiff argues that in *Cosaltzer v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), which predates *Swan*, there is always a question of fact for any period of time less than eight months. Such an argument misreads the Ninth Circuit's holdings as explained in *Fleming v. AC Square, Inc.*, 2012 WL 1868915 (N.D. Cal. 2012):

> Defendant argues that the eight month period of time between the filing of Plaintiff's EEOC charge and his discharge from employment is too great to support an inference of causation. Although the Ninth Circuit has found "without regard to other circumstances ... three to eight months is easily within the time range that supports an inference of retaliation," this court must agree with Defendant in this case. *Cosaltzer v. City of Salem*, 320 F.3d 968, 977 (9th Cir.2003). "Whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances ." *Id*. at 978. Here, Plaintiff has not produced any other evidence supporting the claim for retaliation, and the "surrounding circumstances" are similarly unsupportive of such a conclusion. . . . These circumstances, coupled with the 8–month period between the EEOC charge and the discharge, do not support an inference of retaliation. In the absence of any other admissible evidence, the court finds that Plaintiff has not established a prima facie case of retaliation.

*Id*. at * 11. Judge Campbell in *De La Rosa v. Hanger Prosthetics & Orthodics, Inc.*, 2012 WL 3819459 (D. Ariz. 2012), similarly explained:

> Plaintiff makes a final argument that his termination is per se grounds for a prima facie case of retaliation because it took place less than four months after Plaintiff filed his charge of discrimination with the EEOC. Doc. 69 at 17. Plaintiff relies on *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir.2003), which states that, "[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation." But *Coszalter* did not hold, as

Plaintiff argues, that temporal proximity is a per se ground for a prima facie case of retaliation. In fact, the court proceeded to caution that "[a] rule that any period over a certain time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." *Id.* at 977–78.

The Ninth Circuit has stated that "in some cases, causation can be inferred from timing alone" if the alleged retaliation follows "on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002). But cases that have found a period of months between protected activity and alleged retaliation sufficient for a prima facie case have, at a minimum, relied on an additional showing of knowledge of, or some kind of involvement in, the protected activity on the part of the decision-maker. *See, e.g., Miller v. Fairchild Indus. Inc.*, 797 F.2d 727, (9th Cir.1986) (finding evidence EEOC that management personnel responsible for layoffs had also participated in EEOC negotiations and knew of the plaintiffs' protected activity less than two months earlier was "sufficiently probative ... to establish a prima facie case"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (inferring causation where adverse employment actions took place less than three months after Yartzoff's complaint where his supervisors were aware of his Title VII charges and his participation in administrative investigations); *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 869–70 (9th Cir.1996) (finding causal link where alleged retaliation followed within months of protected activity where supervisor told employee he knew of her complaint and that it "would not be in her best interests" for her to file a discrimination charge). Conversely, the Ninth Circuit has stated that lack of knowledge of a plaintiff's protected activity on the part of the decision-maker "breaks the requisite causal link." *Cohen*, 686 F.2d at 797.

*Id.* at *9.

There is no evidence here reflecting Plaintiff's statements about the Spanish directive or any other arguable protected speech played any role in Plaintiff's termination.[4] (DSOF ¶ 178-184, 187-189, 191) The final decision-maker and the intermediate recommenders were unaware of any alleged protected activity by Plaintiff. (DSOF ¶ 182, 188-189)

---

[4] Plaintiff cites to no evidence that Hemming or anyone else at the District expressed opposition to Plaintiff's speech. Plaintiff also cites to no evidence to demonstrate any pretext regarding the basis for Plaintiff's termination. Plaintiff only relies on temporal proximity.

### *3. Plaintiff Would Have Been Terminated Without Regard To Any Protected Activity*

Even if a prima facie case could be made, the evidence reflects that Plaintiff would have been and was terminated for a multitude of unprofessional behavior by Plaintiff unrelated to the Spanish directive or any protected speech or activity.  (DSOF ¶ 182, 187-189, 191)  *See Christensen v. Washington State Dept. of Corrections*, 2010 WL 1734841, * 10 (W.D. Wash. 2010) (granting summary judgment because "[v]iewing the facts in a light most favorable to the Plaintiff, no reasonable jury could conclude that the two investigations and two disciplinary actions taken against Plaintiff were a result of his speech on inmate violence, and not a result of his unprofessional behavior.").  The reasons for termination were that Plaintiff violated rules and policies as follows: (1) giving permission for West-MEC students to leave campus; (2) not adhering to the curriculum; (3) excessive tardiness; (4) not adhering to State Board regulations on sanitation; playing videos for students and giving hours for this time; and (5) matters set forth in Incident Reports for sleeping on the job, pizza party, students in instructor's office, and excessive tardiness.   (DSOF ¶ 178-184, 188-189)

. . .

. . .

Plaintiff's First Amendment claim should also be dismissed against Defendant Hemming and the District based upon the lack of merit to such claim.

DATED:   November 8, 2016.

UDALL SHUMWAY PLC


_____/s/ David R. Schwartz_____
David R. Schwartz
Kimberly Davis
1138 North Alma School Road, Suite 101
Mesa, AZ  85201
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2016, I electronically filed the attached document using ECF for filing and transmitted the document as follows:

By mail to:

Schaun Owens
16808 N. 20th Street
Phoenix, AZ  85022
Plaintiff

*/s/ Kimberly Kershner*
Kimberly Kershner

4771120.1 \109883-5\